(Decided May 11th, 1864.)

---

## JOHN O. PRICE *vs.* FRANCES T. D. TAYLOR.

ACT OF 1798, CH. 101, SUB-CH. 15, SEC. 17, AND SUB-CH. 8, SEC. 20: ISSUES. FROM ORPHANS' COURT.—The evident purpose of the Act of 1798, ch. 108, sub-ch. 15, sec. 17, and sub-ch. 8, sec. 20, was to enable either of the parties, upon issues from the Orphans' Court upon plenary proceedings, to control the action of the Court in reference to the matter in dispute by the finding of a jury upon issues so framed as to present the subject of the contest.

The duty of the Orphans' Court to make up and transmit issues to a Court of law, when required, is imperative, and it is also bound to accept the conclusions of the jury as final, and to make them effective by proper orders or decrees.

Price vs. Taylor.

The Orphans' Court has no official interest to be subserved by a trial of the issues, and the subsequent disposition of them is a matter in regard to which it has neither right of consultation nor control.

The dismissal or abandonment of issues, of necessity results in a return of the case to the Orphans' Court, where, as a matter of course, all persons interested in the controversy could become parties to the contest without any restriction of the right to have like, or other issues, made up and transmitted.

ISSUES FROM ORPHANS' COURT—AUTHORITY OF CAVEATOR OR PLAINTIFF TO DISMISS.—The caveator is not in any legal sense the representative of parties having like interests depending on the trial of the issues, nor is he bound to try the issues solely for their benefit.

The Court does not intend to say that parties plaintiff would always have the right to dismiss issues without trial. But under the circumstances shown here, and especially in consideration of the fact that the caveator was the only person who appeared in the Orphans' Court to contest the validity of the paper propounded for probate, and of the further facts that the issues sent were framed upon the averments of her caveat and petition, and proceeded with at her own cost, it must be concluded that she had an unquestionable right to withdraw from and abandon the contest, and consequently that the dismissal of the issues was a matter that rested wholly in her discretion.

The plaintiff in a case for the trial of such issues, may, by her own written order, direct the clerk to enter the case dismissed; and the effective character of the order will not depend on her filing it when the Court was actually in session.

JURISDICTION.—The proceedings on the issues being ended by the order to dismiss, and the case being no longer within the jurisdiction of the Court, it has no power or authority to pass a subsequent order, directing the entry of dismissal to be stricken out, and the case brought up by regular continuances entered on the docket.

APPEAL.—An appeal will lie from such an order, as being wholly unauthorized and without lawful warrant.

APPEAL from the Circuit Court for Baltimore County :

The proceedings brought up by this appeal are founded upon issues originally sent from the Orphans' Court of Baltimore City to the Superior Court of Baltimore City, and from thence removed upon the motion and affidavit of the defendant, John O. Price, (now appellant,) to the Circuit Court for Baltimore County.

On the 6th of May 1857, the said John O. Price filed in the Orphans' Court of Baltimore City, a writing purport-

ing to be the last will of Charcilla C. D. Owings, of Baltimore County, then lately deceased.

A *caveat* against granting probate to this paper was filed by the said Francis T. D. Taylor, on the 8th of May 1857, and the answer of John O. Price, asserting the validity of the instrument, and propounding it for probate, was filed the same day.   On the 30th of July 1857, on the petition of Mrs. Taylor, the caveator, the Orphans' Court ordered and directed issues to be sent to the Superior Court of Baltimore City, for trial therein.

On 1st August 1857, the record was accordingly transmitted to the Superior Court.  At the September term 1857, upon the suggestion and affidavit of John O. Price, that a fair and impartial trial could not be had in that Court, the record of proceedings was ordered to be transmitted to the Circuit Court for Baltimore County.

In this last mentioned Court the parties appeared by their attorneys, and the trial was postponed from term to term till the 25th of January 1859, when a writing was filed, which was signed by Mrs. Taylor, and was in the following words: *"Frances T. D. Taylor vs. John O. Price.* In the Circuit Court for Baltimore County; record from the Superior Court of Baltimore City.—*Mr. Carman,* please enter this case dismissed.—*F. T. D. Taylor.*—Witness, *Joshua F. Cockey."*

The case remained without further proceedings, until the 23rd of July 1861, when Mrs. Taylor filed her petition in said Court, asking leave to take from the file the paper writing filed the 25th of January 1859, and purporting to be her order to the clerk to enter this case dismissed, "your petitioner having revoked, and hereby expressly revoking the same, but desiring and requesting that the trial of said issues may be proceeded with.   And as," &c.

This motion or petition was afterwards set down for hearing, and evidence was offered by both sides, among which was the affidavit of Robert L. Lowe, in which he states, "that on the 25th day of January 1859,

he was deputy clerk of the Circuit Court for Baltimore County, and as such clerk made the entry of that date on the docket in this cause; that said entry was made in the clerk's office, and without any direction or order of the Court, or any authority other than the paper writing signed by Mrs. F. T. D. Taylor, which was then delivered to him in said office, and was by him filed among the papers in the cause."

The defendant, Price, filed a copy of the docket entries of the Orphans' Court in relation to this *caveat,* which the Court refused to admit in evidence.

On the 24th of January 1862, the Court (PRICE, J.) passed an order giving leave to Mrs. Taylor to withdraw the paper writing mentioned in her petition, and directing the docket to be corrected by striking out the entry of dismissal and reinstating the case by regular continuances.

From this order the present appeal is taken.

The cause was argued before BOWIE, C. J., and GOLDSBOROUGH and COCHRAN, J.

*I. N. Steele,* for the appellant:

It will be contended for the appellant:

1st. That the plaintiff in the issues pending in the Circuit Court, had the right to dismiss the cause, and her order filed in the clerk's office, authorized the entry of dismissal. 2 *Tidd's Practice,* 731, 732, 733. *Evans' Practice,* 261, 263, 264. Act of Assembly 1840, ch. 96, sec. 2. Act of 1798, ch. 101, sub-ch. 8, sec. 20, sub-ch. 15, sec. 17. *Pegg, et al., vs. Warford,* 4 *Md. Rep.,* 396. *Warford, et al., vs. Colvin,* 14 *Md. Rep.,* 555.

2nd. That if there was any irregularity in filing said order, and making said entry, the said plaintiff had no right, especially upon the lapse of two years, to take advantage of her own wrong, for the purpose of reinstating on the docket a case which had been dismissed by her

own order.  *Collins vs. Johnson*, 81 *Eng. Com. Law Rep.*, 588, 612.  *Kemp vs. Cook*, 18 *Md. Rep.*, 138, 139.

3rd.  That a copy of the docket entry having been exhibited to the Orphans' Court, and that Court having thereupon proceeded to admit the will to probate, it would not be just to that Court or to the defendant, and would be in violation of the principle, that a party will be held to make good his own acts and declarations, which have been acted on by others, if the appellee should now be permitted to undo her own solemn act; and the Court below, instead of giving her leave to withdraw her order, of her own mere motion, and without reason assigned, and without consent of the defendant, should, if that was necessary, have ratified the entry made by the clerk, or directed it to have been made *nunc pro tunc.*  1 *Greenleaf's Ev.*, sec. 307, 208.  2 *Smith's Leading Cases*, 619, 642, 643, 593, 594, 687, 688.

*Reverdy Johnson* and *A. W. Machen*, for the appellee:

1.  The plaintiff upon an issue is not like a plaintiff in an action, and he cannot, by his mere order, work a discontinuance.

(1.)  The proceeding is a statutory one throughout, and to justify such exercise of control over its course by one of the parties, express authority must be found in the Act of Assembly.  But, on the contrary, the Act carefully excludes the inference that the issue is to have all the qualities of an action.  It confers certain powers upon the Court where the issues are to be tried, and declares it shall exercise those powers as if the issue or issues were in a suit therein instituted.  1798, ch. 101.  Sub-ch. 15, sec. 17, and sub-ch. 8, sec. 20.  2 *Archbold's Pract.*, 233.  *Arch. Forms*, 555.  1 *Tidd Pract.*, 679.  2 *Sellon's Pract.*, 334, 335.

An avowant in replevin, though plaintiff in the issue, cannot discontinue.  *Long vs. Buckeridge*, 1 *Strange*, 112.

Mrs. Taylor continued in Court by her attorneys, which at common law would have prevented a discontinuance.  2

*Sellon's Pr.*, 336. 1 *Tidd.*, 679. She could not herself practice law. Const., Art. 4, sec. 31. Art. 1, sec. 1.

(2.) It is unreasonable and unjust, that the party who happens to be plaintiff should have this power. *Pegg vs. Warford,* 4 *Md. Rep.*, 395.

II.—(1.) Whatever Mrs. Taylor might have been able to effect in some other way, her mere order to the clerk amounted to nothing. *Opinion of Supreme Court,* 12 *How.*, 384, 385, in the case of *Sargent vs. State Bank of Ind.*

(2.) It is very clear it was not in the power of the clerk to give any additional effect to the order. *Prout vs. Berry,* 12 *G. & J.*, 285. *Weighorst vs. The State,* 7 *Md. Rep.*, 450. *Watkins vs. The State,* 14 *Md. Rep.*, 412. The clerk cannot enter an appearance, except in the presence of the Court. *State, use of Sprigg, vs. Jones,* 8 *Md. Rep.;* 95.

III.—Mrs. Taylor's order to Mr. Carman, remaining as it did *in fieri,* without any action of the Court upon it, was at all events revocable by her. The intermediate proceedings in the Orphans' Court cannot prejudice us; for:

(1.) Mrs. Taylor's order is not a representation of the existence of a certain state of facts, but an act; its legal operation, whatever it might be, was as capable of being known and recognized by the appellant, as by Mrs. Taylor herself. There can be no estoppel under such circumstances. *Tongue's Lessee vs. Nutwell,* 17 *Md. Rep.*, 230. *Casey's Lessee vs. Inloes,* 1 *Gill,* 501, 502. *Mayor & City Council vs. Porter,* 18 *Md. Rep.*, 301. 2 *Smith Lead. Cas.;* 460. *Summersett vs. Adamson,* 1 *Bing.*, 75, (8 *E. C. L.*, 256,) per *Tenterden, C. J. & Parke, J. Stratford Railway Co. vs. Stratton,* 2 *Barn. & Adol.*, 518, 525, 526, (22 *E. C. L.*, 130.)

(2.) It is a question of jurisdiction. While the issues remained in fact untried and undisposed of in any method recognized by law, the Orphans' Court were utterly without power to admit the will to probate. Their order of the 26th of March 1859, consequently was a nullity. *Pegg vs. Warford,* 4 *Md. Rep.*, 394. *Mayor & City Council vs. Por-*

46    v. 21

*ter*, 18 *Md. Rep.*, 300, 301. *Sisarone vs. Beadle*, 1 *Dowl. Pract. Cas.*, (*new series*,) 566.

(3.) The Orphans' Court did not act upon Mrs. Taylor's -order. It was not produced before them.

(4.) Price did not use Mrs. Taylor's order in the way in -which only he could, in any view of the case, legitimately make use of it, namely, as a foundation for a mutual agreement or consent to the abandonment of the former issues, for the purpose of allowing other issues to be framed and -sent. *Pegg vs. Warford*, 4 *Md. Rep.*, 396.

IV.—The order of the Circuit Court for Baltimore County, now in question, is not one properly subject to appeal: 1 *Code Pub. Law*, *Art.* 5, *secs.* 3 and 5, (1832, *ch.* 208.) *Crockett vs. Parke*, 7 *Gill*, 240. *Savage Man. Co. vs. Owings*, 3 *Gill*, 498. 2 *H. & J.*, 345. 1 *Md. Rep.*, 13. 2 *H. & J.*, 247;—the matter lying peculiarly within the jurisdiction of the Circuit Court. *Balch vs. Shaw*, 7 *Cushing*, 282.

'COCHRAN, J., delivered the opinion of this Court:

In disposing of this appeal we are called upon to decide -whether the appellee had power to dismiss the issues in this case, and if so, whether her order to the clerk of the Court below, directing him to make that entry, was an effective exercise of that power.

These issues were made up and sent to the Superior Court, in pursuance of an order passed by the Orphans' ·Court of Baltimore City, on the petition of the appellee, who had previously filed a *caveat* in that Court against the probate of the paper propounded by the appellant, as the last will and testament of Charcilla C. D. Owings, deceas-ed, by which order the appellee was made plaintiff and the appellant defendant. The case was subsequently removed from the Superior Court to the Circuit Court for Baltimore County.

The Act of 1798, ch. 101, sub-ch. 15, sec. 17, provides, that the Orphans' Court shall direct an issue or issues to be made up and sent to a Court of law for trial, when either

party to any contest upon a plenary proceeding shall require; and sub-ch. 8 sec. 20, provides, that the Court of law, to which the issues may be sent, shall have power to direct the jury, and grant a new trial, as if the issue or issues were in a suit therein instituted, and that the finding of the jury, when certified by the Court, shall be admitted and taken by the Orphans' Court as conclusive upon the disputed matter of the issues.

The evident purpose of these provisions, was to enable either of the parties to any contest, upon plenary proceedings, to control the action of the Court, in reference to the matter in dispute, by the finding of a jury on issues so framed as to present the subject of the contest. The duty of the Orphans' Court to make up and transmit issues to a Court of law, when required, is imperative, and it is also bound to accept the conclusions of the jury as final, and to make them effective by proper orders or decrees. Issues are made up, not for the purpose of aiding the Court in the exercise of its judicial functions, but to enable the party demanding them to ascertain, through the medium of a jury, a state of case which the Court is bound to adopt, and to which its subsequent action must conform. In view of the purpose contemplated by the provisions of the Act authorising this mode of proceeding, we may safely assume that the Orphans' Court had no official interest to be subserved by a trial of these issues, and that their subsequent disposition was a matter in regard to which it had neither right of consultation nor control. It was said in argument, however, that the appellee represented other parties in interest, who were entitled to protection by a trial of the issues framed on her petition, and consequently that she had no right or power to dismiss them without trial. This proposition was presented, not as depending upon any community of interest or understanding that they were to be represented, but as a legal deduction from the fact that the transmission and pendency of these issues, operated to deprive them of the right of having issues to try the same

questions; and it assumes that the appellee, by thus ac-
quiring the exclusive right to litigate the questions pre-
sented, became by implication the representative of all
parties having like interests depending on their trial. In
our opinion this inference is not entirely correct. It is true
that after these issues were transmitted, neither the Or-
phans' Court, nor the Court to which the issues were sent,
could authorise the joinder of other parties with the ap-
pellee, and that, while the issues were pending in the Court
below, no other issues presenting the same questions could
be granted; but it does not follow that the appellee was, in
any legal sense, the representative of parties affected by
these disabling conditions, or that she was bound to try the
issues solely for their advantage. Even on the theory sug-
gested, it was impossible for the presumptive representa-
tion of their interests to continue longer than the pending
issues suspended their right to contest the same matter by
other issues, and testing the appellee's right to dismiss by
inferences from that state of case, the weight of reason
would seem to be in favor of rather than against it. The
dismissal or abandonment of issues, of necessity, results in
a return of the case to the Orphans' Court, where, as a
matter of course, all persons interested in the controversy
could become parties to the contest, without any restriction
of the right to have like or other issues made up and trans-
mitted; and in that view no person, whose rights were af-
fected by the issues sent in this case, could reasonably ob-
ject to or complain of their dismissal. We do not intend
to say however that parties plaintiff would always have the
right to dismiss issues without trial, for we do not deny
the possibility of cases, where, from the nature of the facts,
and relations of the contesting parties, it would be expedi-
ent to frame issues so that the parties plaintiff would, in
some sense, be made to represent the interests and rights of
others. But under the circumstances shown here, and es-
pecially in consideration of the fact, that the appellee was
the only person that appeared in the Orphans' Court to,

Price *vs.* Taylor.

contest the validity of the paper propounded for probate, and of the further facts, that the issues sent were framed upon the averments of her *caveat* and petition, and proceeded with at her own cost, we must conclude that she had an unquestionable right to withdraw from and abandon the contest, and consequently, that the dismissal of the issues was a matter that rested wholly in her discretion.

The effort made in the argument of the case to show that her order to the clerk, to enter the case dismissed, was null and of no effect, did not satisfy us of that fact. In our opinion the question, as to the effect of such an order in a case like this, should be determined by the intention it expresses, rather than by analogies from rules regulating discontinuances in cases at law. The order in question shows beyond controversy, that the appellee intended thereby to abandon the contest, and place the case precisely as it was before she filed her *caveat* in the Orphans' Court; and that we think was its actual operation and effect. It cannot be said that she was not in Court, and for that reason not competent to direct the dismissal of the case, for she was there as well by the order of the Orphans' Court transmitting the issues, as by the appearance entered for her by her attorneys, and as we have before said, with power to terminate the contest by directing the clerk to make an entry to that effect. But even according to the established practice of our Courts in law cases, the effective character of the order did not depend on filing it when the Court was actually in session. The rule on that subject, as stated in *Evans' Prac.*, 264, is, that a plaintiff may discontinue at any time by a written order to the clerk directing him to make that entry. Entertaining the opinion, that the proceedings on the issues were ended by the order to dismiss, and that the case was no longer within the jurisdiction of that Court, we reach the conclusion, that the Court had no power or authority to pass the subsequent order from which this appeal was taken. The fact that a period of more than two years was suffered to pass, after

the case was dismissed, before application was made for the order to strike out that entry, is sufficient in itself to warrant the reversal of the order reinstating the case; but as we have determined the question on other grounds, that point need not be considered here.

It follows from these views that the motion to dismiss the appeal must be overruled. It is true that the right of appeal in the trial of issues is limited by the Code, Art. 5, sec. 5, to cases where exceptions are taken to the rulings of the Court; but this appeal does not fall within that provision. The order from which this appeal was taken, was passed by the Court after the case had gone from its jurisdiction, and for that reason was wholly unauthorised and without lawful warrant. Under these circumstances, the rule applied in the case of *Webster vs. Cockey*, 9 *Gill*, 93, must control us in disposing of the motion to dismiss.

*Order reversed with costs to appellant.*

(Decided May 13th, 1864.)