## MARY LUCINDA PASSMORE *v.* MICHAEL LAWRENCE HARRISON

[No. 36, September Term, 1973.]

*Decided October 23, 1973.*

144

The cause was argued before MOYLAN, POWERS and GILBERT, JJ.

*Harry A. E. Taylor, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County*, and *Carmen D. Tidler, Assistant State's Attorney for Prince George's County*, on the brief, for appellant.

*Jess Joseph Smith, Jr.*, with whom was *George T. Burroughs* on the brief, for appellee.

Powers, J., delivered the opinion of the Court.

In the absence of a better explanation in the record, we can but conclude that it was indifference, ineptness, carelessness, or all of them, which precluded a determination of the merits of this paternity petition in the Circuit Court for Prince George's County.

The court record began on 22 July 1970 with the filing of a petition to establish paternity, signed by Mary Lucinda Passmore as petitioner and bearing the names of the State's Attorney and an Assistant State's Attorney as her attorneys. An oath of indigency was also filed. In her petition Miss Passmore alleged that she was the mother of illegitimate twin boys born out of wedlock on 25 June 1970. She further alleged that the children were conceived on or about 12 November 1969, and that Michael Lawrence Harrison was the father.

Returns of the sheriff show that on 5 August 1970 subpoenas and copies of the papers were served on Harrison, a minor, and on his parents.

Next in the record was a line filed on 14 September 1970 directing the clerk to mark the cause "Dismissed without prejudice". The line was signed with the name of the State's Attorney and approved by a circuit judge. It was not signed by Miss Passmore, nor did it contain any indication that a copy had been or was to be sent to her or to Harrison.

The record remained closed for almost 21 months. On 9 June 1972 a brief petition was filed by an Assistant State's Attorney asking the court to strike the line "dismiss without prejudice". The only reason given was that "the defendant is now at the above address where he may be served". An ex parte order was entered by the court that the line be stricken and the petition be re-issued. No notice of the petition to strike or of the order appears to have been given to anyone. New subpoenas were issued, and were served, with copies of the 1970 petition, on Harrison and his parents. Harrison filed no answer, but did appear and sign a waiver of a jury trial.

Upon the case as it was then thought to have been revived,

a hearing was held before Judge James H. Taylor. The transcript shows that Judge Taylor found Harrison to be the father of the children, and determined an amount of money he should be required to pay for their support. Before a decree was signed, Harrison, through counsel, filed a petition for rehearing. On behalf of Miss Passmore, an Assistant State's Attorney filed an answer. At a hearing on the petition and answer Judge Taylor granted a rehearing on all the issues of the case, and granted Harrison 15 days within which to file an initial pleading.

Harrison filed a demurrer to the original petition and a motion to strike it. Both were argued before Judge Samuel W. H. Meloy, who granted both and dismissed the action on the ground of lack of jurisdiction.

Over the names of the State's Attorney and an Assistant State's Attorney as solicitors for the petitioner, a notice of appeal was filed on behalf of Miss Passmore. The appeal brings before this Court only the correctness of the order dismissing the case; not the merits as they appear in the transcript of the testimony taken before Judge Taylor.

We must affirm the decree of the circuit court. When the case was dismissed by the filing of an order to the clerk, signed by the petitioner's counsel of record, it was at an end. Two cases decided by the Court of Appeals, almost 100 years apart, support this view. *Price v. Taylor*, 21 Md. 356 (1864) arose from issues in a will caveat case sent by the Orphans' Court of Baltimore City to the Superior Court, whence it was removed to the Circuit Court for Baltimore County. There the caveator filed an order to the clerk, "please enter this case dismissed". Two and one half years later she filed a petition to take the paper writing from the file, saying that she revoked it. Upon hearing, the circuit judge granted leave to withdraw the paper, and struck out the entry of dismissal. In reversing, the Court of Appeals said, at 365:

> "The rule on that subject, as stated in Evans Pr. 264, is, that a plaintiff may discontinue at any time by a written order to the clerk directing him to make that entry. Entertaining the opinion, that the

> proceedings on the issues were ended by the order to dismiss, and that the case was no longer within the jurisdiction of that court, we reach the conclusion, that the court had no power or authority to pass the subsequent order from which this appeal was taken."

and the Court said further, at 366:

> "The order from which this appeal was taken, was passed by the court after the case had gone from its jurisdiction, and for that reason was wholly unauthorized and without lawful warrant."

In *Mildred Davis, Inc. v. Hopkins*, 224 Md. 626, 169 A. 2d 450 (1961), the plaintiff had taken a partial summary judgment for the admitted portion of the claim sued for, with the balance "to remain open until the trial of this matter". In this posture, the plaintiff filed an order to the clerk, "Please enter the above entitled case dismissed without prejudice". Almost three years later the plaintiff filed an order directing the clerk to strike out the order of dismissal. After a hearing, the lower court denied the request. In an appeal which involved this and other questions, the Court of Appeals said of the attempted revival, at 629-30:

> "The voluntary dismissal of the balance of the plaintiff's claim was, however, permitted and effectual under Md. Rule 541. * * * Its motion * * * could not be used as a means of reviving the suit as to the balance of the claim since the appellant itself had put its suit for the balance completely out of existence."

By analogy to Maryland Rule 541, applicable to law cases, we think that the dismissal of this paternity petition had the same effect as the dismissal of a law case, including a voluntary judgment of *non pros*. Upon proper and timely motion, notice, and hearing it may be that the court could have exercised revisory power and control over the case as authorized and limited by Maryland Rule 625 a, but there was no attempt here to invoke such power.

To be sure, the dismissal was without prejudice, and would have been no bar to the timely filing of another suit seeking the same relief. When the attempt was made early in June of 1972 to breathe life into a dead case, it was still 16 days before the two year period for commencing the proceedings would expire, but no new proceedings were commenced.

Some comments are necessary about the duties of an attorney to a client he represents without charge because of the attorney's public office, or employment by or through a public agency, at public expense. Code, Art. 16, § 66C provides that if a petitioner in a paternity proceeding makes oath that she is without funds to obtain private counsel, it is the duty of the State's Attorney to act on behalf of the petitioner without charge. In the Uniform Reciprocal Enforcement of Support Act, Code, Art. 89C, § 12 and § 14 (b) impose the duty on the State's Attorney, or in some cases the counsel to the county government, to represent certain petitioners. The Public Defender is required by Code, Art. 27A, § 4 to provide representation for indigent defendants in criminal, juvenile, defective delinquency, post-conviction, and other cases.

In each of the situations mentioned, the attorney-client relation does not arise because the client selects, engages, and compensates the attorney. The relation arises because the law, as a matter of declared public policy, requires it. But how the relation may arise cannot diminish the breadth and scope of the duty which the attorney owes to his client.

Maryland Rule 1230 adopts the Code of Professional Responsibility of the American Bar Association. Two objectives laid down in the Ethical Considerations stated in that Code are that a lawyer should act with competence and proper care in representing clients (EC 6-1) and that the duty of a lawyer, both to his client and to the legal system, is to represent his client zealously within the bounds of the law (EC 7-1). Neither objective was met in the representation of Miss Passmore in this case.

*Order affirmed.*
*Costs to be paid by Prince George's County, Maryland.*