(Decided Dec'r 15th, 1863.)

GEORGE W. COOK *vs.* HENRY CARR AND VIRGINIA HIS WIFE.

EVIDENCE: DECLARATIONS.—In the trial of issues from the Orphans' Court, the main fact in dispute between the alleged donee, defendant, and heirs at law of the donor, plaintiffs, was, whether a sum of money received by the defendant was a loan, or an absolute gift, and the evidence adduced to establish the fact of a gift related to the personal relations existing between the defendant and the person from whom the money was received, and their declarations and conduct to each other in the presence of other persons. HELD:

1st. Where there was also evidence of artifice on the part of the defendant in obtaining the money, and of threats calculated to intimidate the alleged donor, and to induce the declarations relied on, that other declarations and acts of the alleged donor in the presence of the defendant, some of them subsequent to those relied on, are admissible to show that the money was received as a loan and not as a gift.

2nd That the rules of law in regard to the admissibility of evidence, are less strict when the circumstances shown are such as to excite suspicion of bad faith or the taking of improper and unjust advantages.

ORPHANS' COURT—PRACTICE IN: ISSUES.—The Orphans' Court have no power to make or re-model issues after they have been transmitted for trial.

The issues, as transmitted, present all the questions, and, of necessity, the only questions the jury can try, and neither party has any power, by plea or otherwise, to change or qualify them.

PRAYERS: PRACTICE.—Assuming that the question in issue was one to be determined on the whole evidence, it cannot be doubted that instructions predicated on a part of it, so drawn as to have an effect adverse or contrary to the proper inference from the whole, would be erroneous.

APPEAL from the Superior Court of Baltimore City :

This is an appeal from a judgment of the Superior Court of Baltimore City, upon the following issues transmitted to said Court from the Orphans' Court of said City: "First, whether the said George W. Cook is indebted to the estate of Sarah A. Weigart;" and "second, and if indebted, to what amount he is so indebted."

Before the trial of these issues the defendant filed a plea of the statute of limitations, which on motion of the plaintiffs was stricken out. The defendant thereupon moved for a continuance of the cause, but said motion was overruled.

The facts appearing from that portion of the evidence to which no exception was taken, were as follows:

That Sarah A. Weigart died intestate, and letters of administration upon her estate were granted to George W. Cook; that Cook had been taken into the family of the deceased when a small child and raised by her, and had assisted her in her business of selling milk, in which she had accumulated several thousand dollars, by carrying the milk around to her customers; that Virginia Carr, wife of the appellee, Henry Carr, was a grand-daughter of the deceased, and entitled to a distributive share of her estate; that on the 1st of April 1857, Sarah A. Weigart had on deposit in the Savings Bank of Baltimore the sum of $2938.84, which, with subsequent deposits up to the 6th of

December 1858, amounted to $3321.73; that of this amount she had drawn out at one time $165, and at another the sum of $2000, which latter amount she lent on mortgage to the appellee Carr; that the balance of said amount on deposit, $1156.73, had been at various times drawn by Geo. W. Cook, the appellant, by eight different checks payable to bearer. That S. A. Weigart could not write, and that the body of said checks as well as the signatures, were all in Cook's hand-writing, S. A. Weigart having made her mark to each, witnessed on different occasions by J. A. Eldridge, Jane Weigart, M. J. Weigart and Elizabeth Hinds, several of whom afterwards testified in the case, that on the 6th of August 1859, Cook the appellant, obtained from the said deceased about $1800, which he claimed to have received as an absolute gift, offering in evidence to that effect the declarations of said deceased; the appellees also offering in evidence declarations of said deceased at other times, of a contrary character, and that on one occasion Cook called the attention of a witness to an altercation between the deceased and himself, saying: "I will tell you what it is about, I got the money and she has just found it out; the sum mentioned was about $1800."

*1st Exception.* The plaintiffs proved by John Downey, that some time after the death of George Weigart, husband of the said Sarah, at the instance of George W. Cook, he went with him to her house, when she commenced talking about the $2000, and said that George W. Cook had $1800 of her money, which she said she had lent him, he saying that she had given it to him, and she in return telling him that he was to pay her interest for it; that Cook said he could prove that she had given it to him by Mrs. Eldridge and Mrs. Weigart, whom he brought into the room for that purpose; that after they came in, the deceased laid her hand on the arm of witness, and in a half crying tone, and distressed manner, said she did not give him the money, adding, "and if I did say I gave it to him, I only said it to keep the peace." To this evidence the de-

fendant objected, and the objection being over-ruled by the Court below, (MARTIN, J.,) excepted.

*2nd Exception.* The plaintiffs further proved by Mrs. Eldridge, that she was called on by Mr. Cook to hear her grand-mother, (S. A. Weigart,) say whether she gave him the money or loaned it to him; that Cook said: "Now mother did you not give me that money?" And that she replied: "No, George, I only loaned it to you, for that money I wanted myself, and interest for it;" adding: "If I did say it Downey, (Mr. Downey being present,) that I gave him the money, I only said it to keep the peace;" that previously Cook had called the witness into the parlor to hear his mother say that she gave him the money; that he then asked her: "Did you not give me the money?" and she answered: "Yes;" that witness had heard a great many quarrels between Cook and Mrs. Weigart, about this money; that on one occasion she "heard her call him a swindler, when talking about the money," and on another occasion heard her say "that he had forged her name," which he denied; and at another time he made some threat as to what he would do if she were not his mother. To all of which evidence the defendant objected, and the objection being over-ruled by the Court, excepted.

*3rd Exception.* The plaintiffs further proved by Mrs. Jane Weigart, that she was present at the interview mentioned by Mr. Downey and Mrs. Eldridge, when Cook asked Mrs. Weigart if she had given or loaned him the money, and she replied that she had not given him the money, and that this conversation took place a few days before Mrs. Weigart's mind was destroyed by paralysis. To all of which evidence the defendant objected, and the objection being over-ruled by the Court, excepted.

*4th Exception.* The plaintiffs prayed the Court to instruct the jury: "That upon all the evidence in the case, the plaintiffs are entitled to recover for any money belonging to Sarah Weigart, which came into the possession of the defendant, if they find that in fact any such money came

into his hands, and was converted by him to his own use, unless they shall find from said evidence, that said Sarah Weigart *intended* to give it to the defendant; and that if the jury so find, that then the gift could not be revoked by subsequent declarations." This prayer the Court granted.

The defendant also offered several prayers, some of them segregating portions of the evidence, and drawing conclusions therefrom at variance with the inferences of law drawn from the whole evidence by the plaintiffs' prayer, and others covering substantially the same ground as the plaintiffs' prayer, all of which were rejected by the Court. To the ruling of the Court upon the plaintiffs' and defendant's prayers, the defendant excepted.

The verdict of the jury and the judgment of the Court being in favor of the plaintiff for the sum of $1000, the defendant appealed to this court.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*B. C. Barroll*, for the appellant :

That it is the statement or declaration of a party which constitutes the thing "a gift." And that the *intention* of such party is not the controlling element in the investigation.

The question to be decided is, did the party make the gift? If she declared, as is stated in the evidence, *that she had given to Cook as a donation, about $1000, which had been loaned to Henry Carr on mortgage;* then it is respectfully insisted, that such admission and statement made while Cook had the money, made it a gift to him, without any regard to her intention at the time or afterwards. *Stewart & Wife vs. Pattison's Excr.*, 8 *Gill*, 46, 55. 5 *T. B. Munroe*, 503. 9 *Ga. Rep.*, 539, 541. 16 *Pick.*, 62. 17 *Ala. Rep.*, 330.

That Mrs. Weigart's subsequent statements were wholly inadmissible. Mrs. Weigart's declarations were not admissi-

ble to charge the defendant with a debt. They were offered for that purpose, not to contradict or explain any testimony offered by the defendant, but as original testimony to make out a case of indebtedness against him to her estate. That the statements were made in his presence does not vary the question, *unless he assented to them as being true;* on the contrary the evidence is that he always denied them. They were not part of the *res gestæ,* on the contrary they occurred long subsequent to the transaction to which they related.

The fact that some of them were at Cook's procurement, does not vary the question, if he had offered them in evidence, they would have bound him, if he had given a part of a conversation, the whole might have been insisted on. But the appellant is at a loss to conjecture upon what ground the Court allowed the *unsworn declarations* of Mrs. Weigart to be offered in evidence to sustain a case against defendant and in favor of her estate.

*E. Otis Hinkley,* for the appellees :

1. The reasons given in the Court below for striking out the plea of limitations, are sufficient to justify in this Court the action of the Court below.

The rule of the Superior Court is, that the plea of limitations must be put in within fifteen days. Here nearly three months intervened between the sending of the issues to the Superior Court and the day of filing the plea. *Nelson vs. Bond,* 1 *Gill,* 218. *Bowlin vs. Lamar,* 1 *Gill,* 359. *Pegg vs. Warford,* 4 *Md. Rep.,* 392. *Yingling vs. Hesson,* 16 *Md. Rep.,* 120.

2. The refusal to continue was no error; because, 1st. It was a matter of discretion. 2nd. The reason given was not a good one, for there is no right of *mandamus* in such a case. 3rd. Or the reason is not sufficient, because the defendant had a right to an appeal from the Orphans' Court, and in fact he had exercised that right. *Tapping on Mandamus,* 21, 76 *Law Lib.,* 73.

3. All the testimony excepted to was rightly admitted; because, 1st. The declarations must all be taken together to enable the jury to determine what was the intention; especially where there is some evidence of threat, restraint and fraud, and there was no error in admitting them, because the jury were rightly instructed about them in the prayer. 2nd. All declarations made at the same time must be taken together. 3rd. These declarations were all made to persons whom the defendant himself had brought in for the very purpose of establishing them, he cannot therefore complain if they were adverse to him. 1 *Greenlf's Ev.*, *secs.* 108, 193, 201. *Bowie vs. Stonestreet*, 6 *Md. Rep.*, 418. *Budd vs. Brooke, et al.*, 3 *Gill*, 198.

4. The plaintiff's prayer includes all the essential points: 1st. The getting of the money. 2nd. The conversion to his own use. 3rd. The intention of a gift. 4th. The subsequent declarations. And the material points embraced in the defendant's nine prayers being all fully covered by this one carefully worded instruction, there was not only no error in refusing these prayers, but it was very proper for the Court to place the matter before the jury in the simplest and clearest form, and without unnecessarily multiplying the prayers, that is, the formal terms in which the instructions are given.

But there are other objections to the defendant's prayers. See 3 *Gill*, and 6 *Md. Rep.*, above cited; also *Byer vs. Etnyre, et al.*, 2 *Gill*, 150. *Charleston Ins. & Trust Co. vs. Corner, Id.*, 410.

COCHRAN, J., delivered the opinion of this Court:

This is an appeal upon exceptions taken to the rulings of the Superior Court in a trial of issues as to the indebtedness of the appellant to the estate of Sarah Weigart, sent from the Orphans' Court for Baltimore City.

The appellant was the administrator of that estate, and the issues, in substance, present the simple questions, whether he was indebted thereto, and if so, to what amount.

After these issues had gone to the Superior Court, the appellant filed a plea of limitations, which, on motion of the appellees, was stricken out; he then filed a motion for a continuance, on the ground of an application then made to the Orphans' Court to send another issue to be tried with the issues then pending, which motion the Court over-ruled. As the questions as to the propriety of the Court's action on these motions have no connection with those subsequently raised in the progress of the trial, we shall consider them separately. These issues having been framed, without objection from the appellant, so as to present for the finding of the jury the fact, as well as amount of his indebtedness to the estate of Sarah A. Weigart, without regard to time, it is obvious that the plea of limitations would have had the effect of varying the real questions transmitted for trial. The construction of the Act of 1798, ch. 101, sub-ch. 15, secs. 16 and 17, and sub-ch. 8, sec. 20, providing for making up and transmitting issues, given in the case of *Pegg vs. Warford,* 4 *Md. Rep.,* 385, warrants the conclusion that there can be no modification of issues after they have been sent from the Orphans' Court. The issues as transmitted present all the questions, and of necessity the only questions, the jury can try, and neither party has any power, by plea or otherwise, to change or qualify them. The plea in this case was clearly objectionable on that ground, and in our opinion was properly stricken out.

For substantially the same reason, the motion for a continuance was properly overruled. The affidavit of the appellant upon which that motion was based, shows that the issue prayed in the Orphans' Court was not a separate and independent issue, but one intended to change or qualify the issues then pending in the Superior Court, and as the Court of Appeals said in *Pegg vs. Warford,* that it "did not regard the Orphans' Court as having power to revoke or remodel issues after they have been transmitted," we must hold that no sufficient cause of continuance was shown.

During the trial the appellant reserved four exceptions,

three of them having been taken to the admission of evidence, and the 4th to the rejection of his prayers, and to the granting of one offered by the appellees.

We do not find upon examination of the testimony covered by these exceptions, that the objections made to its admission have any substantial foundation. The determination of the main fact in dispute, whether the sum of money proved to have been received by the appellant from his intestate, Mrs. Sarah A. Weigart, was loaned or presented to him as a gift, appears to have been one, more or less dependent on their personal relationship, and their declarations and conduct to each other in the presence of other persons. It abundantly appears from evidence admitted without objection, that Mrs. Weigart was aged and infirm both in body and mind, and in some degree incapable of managing her business affairs. There was also some evidence, not only of artifice on the part of the appellant in obtaining the money, but of threats calculated to intimidate one in her infirm condition, and by which her declarations, that she had given him the money, might have been induced. Under these circumstances, we cannot doubt the propriety of admitting any evidence that would disclose to the jury the real motives and intentions of each of these parties towards the other, and thus, directly or by inference, show the true nature of the transaction. The rules of law in regard to the admission of evidence, are less strict when the circumstances shown are such as to excite suspicion of bad faith, or the taking of improper and unjust advantages. We think the evidence was properly admitted.

Looking to the question of the appellant's liability, as one for determination upon all the evidence in the case, it follows, that the appellees' prayer was properly granted. That prayer seems to have been framed with careful reference to the character of the testimony, and so as to submit the correct instruction to the jury. Assuming that the question was one for determination upon the whole evi-

dence, it cannot be doubtel that instructions, predicated on a part of it and so drawn as to have an effect adverse or contrary to the proper inference from the whole, would be erroneous. The appellant's prayers, in so far as not substantially embraced by the appellees' prayer, are objectionable on that ground. As abstract legal propositions they might be considered less doubtful, but as we hold, that, so far as applicable to the case, they were embraced by the appellees' prayer, and in other respects framed upon an objectionable segregation of the evidence, we think there was no error in rejecting them.

The rulings of the Court on all the exceptions must be affirmed.

*Judgment affirmed.*

(Decided Dec. 15th, 1863.)