REVERDY DRONENBURG, ADMINISTRATOR OF THE ESTATE OF EPHRAIM G. HARRIS, *vs.* DAVID FULTON HARRIS ET AL.

*Money Paid to Administrator in this State for Death Caused by Negligence in Another State is Distributable According to the Law of that State—Damages Paid for Suffering and Loss by Decedent—Release to Railroad Company for Negligence—Evidence—Issues from the Orphans' Court.*

When an administrator, appointed in this State of the property of a resident whose death was caused by negligence in another State, receives a sum of money on account of such death, and under the laws of that other State, the damages for a death so caused are to be sued for by the administrator and distributed to designated beneficiaries, but are not to be assets of the estate of the deceased, then the sum so collected by the Maryland administrator is to be distributed to the persons designated by the statute of that other State and does not constitute assets of the estate of the decedent distributable under the Statute of Distribution of this State, the administrator under the laws of this State not being entitled to recover damages for such death.

But a sum collected by the administrator in such case not for the death of his decedent but on account of the suffering and expenses he was subjected to on account of said negligence before his death, is to be accounted for as assets of his estate by the administrator.

A resident of Maryland was killed in a railroad wreck in the District of Columbia, caused by the negligence of the railroad company. He was

nearly of age, unmarried, and left surviving him a mother and ten brothers and sisters, some of the whole and others of the half blood. He did not contribute to the support of any of these relatives, and no action could have been maintained in Maryland on account of said death. Under the laws of the District of Columbia, an action was maintainable there against the railroad company by the administrator of the deceased on account of said negligence, and the damages recovered would not be assets of his estate but would enure to the benefit of his family, and in this case, according to the statute of the District of Columbia, would belong wholly to his mother, and it would not be necessary to show that he contributed to her support. An administrator of the estate of the deceased was appointed in Maryland, and he received from the railroad company as a settlement and without suit therefor, five thousand dollars for the release of all claim on account of said death, and the further sum of five hundred dollars for all expenses and for the suffering endured by the deceased from the time of his injury to the time of his death. The plaintiffs in this case, some of the brothers and sisters of the deceased, alleged that the money so collected should be distributed by the administrator to his next of kin, according to the Maryland statute of distribution, and certain issues were sent from the Orphans' Court to a Court of law for trial. *Held*, that evidence is admissible to show that the agent of the railroad company considered that the only person who had any claim against the railroad company on account of the death, was the mother of the deceased and that the claim referred to in the first release given in consideration of the payment of five thousand dollars, was understood by him and the administrator to be her claim under the laws of the District. Such evidence does not vary the terms of the release, but identifies its subject matter.

*Held*, further, that evidence as to negotiations between the administrator and other parties and the railroad company, leading to a settlement, and as to why the Orphans' Court granted letters to the administrator, and as to what advice was given, and as to whether the administrator had stated an account in the Orphans' Court, was all immaterial and properly excluded.

*Held*, further, that since the evidence shows that the five thousand dollars was paid on account of the death of the deceased, the administrator is not required to account for it in the Orphans' Court of Maryland, but the sum is payable under the statute of the District of Columbia to the mother.

*Held*, further, that since the five hundred dollars was paid on account of damages, the deceased himself and his estate sustained which the administrator could have sued for under the law of Maryland, that sum should be accounted for in the Orphans' Court.

*Held*, further, that the burden of proof was upon the plaintiff to establish the affirmative of the issues.

*Held*, further, that it was not necessary for the defendant to prove that

the death of the deceased was caused by the negligence of the railroad company, since that fact was assumed to be true by the issues to be tried.

When an issue sent from the Orphans' Court to a Court of law for trial, presents only a question of law, it should not be submitted to the finding of the jury.

*Decided November 14th, 1908.*

Appeal from the Circuit Court for Carroll County, (FORSYTHE and BRASHEARS, JJ).

The issues sent from the Orphans' Court of Frederick County to be tried by a jury were as follows:

(1) Whether or not the sum of $5,500 or any part thereof, collected without recourse to legal proceedings from the Baltimore and Ohio R. Co., by Reverdy Dronenburg, administrator of the estate of Ephraim G. Harris, deceased, solely by virtue of his letters of administration issued to him out of the Orphans' Court for Frederick County, Maryland, and under which letters he acted when he collected said money, was received by him under the authority vested in him by section 103 of Art. 93 Code of 1904, as pecuniary damages for the severe mental and physical pain and great damage both in person and estate suffered by his decedent Ephraim G. Harris, in having been injured by the negligence of the said Baltimore and Ohio Railroad Company, a body corporate, on the 30th day of December, A. D. 1906, in the wreck known as the Terra Cotta disaster, which occurred on said road in the District of Columbia, on said date and from which injuries the said Ephraim G. Harris died on the 31st day of December, A. D. 1906?

(2) Whether or not the said sum of fifty five hundred dollars or any part thereof, so collected by the said Reverdy Dronenburg, administrator of the estate of Ephraim G. Harris, deceased, as set forth in the first issue, and for which sum of money he gave his receipt to the Baltimore and Ohio Railroad Company, a body corporate, as administator, of said estate, was properly assets belonging to the estate of the said

decedent, and subject to distribution to his heirs at law and next of kin under the jurisdiction and control of the Orphans' Court for Frederick County, Md., and in accordance with the provisions of the law of the State of Maryland, governing descents and distribution ?

*Third.* Whether or not it was the duty of Reverdy Dronenburg, administrator of the estate of Ephraim G. Harris, deceased, to officially report the receipt by him of the sum of fifty-five hundred dollars to the Orphans' Court for Frederick County, Md., because said sum was collected by him from the Baltimore and Ohio Railroad Company, a body corporate, solely under the authority of his letters of administration issued to him by the Orphans' Court for Frederick County, Md., and for which sum he gave his receipt as administrator of said estate; and to have also distributed said sum of fifty-five hundred dollars under the direction and control of said Court?

*Fourth.* Whether or not Ida J. Dronenburg, the mother of Ephraim G. Harris, deceased, suffered any damage, injury or loss by the death of said Ephraim G. Harris, caused by the negligence of the Baltimore and Ohio Railroad Company, a body corporate, for which she could have recovered any pecuniary damage whatsoever by reason of the loss of his support or the loss of his services in view of the fact that he was within nine days of being twenty-one years old at the time of his death, and was not rendering her any services and did not provide for her maintenance and support prior to his death?

*Fifth.* Whether or not Ida J. Dronenburg, the mother of said decedent, is entitled to receive the full sum of five thousand dollars collected by Reverdy Dronenburg, administrator of the estate of Ephraim G. Harris, deceased, from the Baltimore and Ohio Railroad Company, aforesaid, solely under the authority of his letters of administration issued to him out of the Orphans' Court for Frederick County, Md., and without recourse to legal proceedings against said Baltimore and Ohio Railroad Company, in view of the following facts:

(*a*) That at the time of his death the said Ephraim G. Harris, was within nine days of twenty-one years of age;

(*b*) That said decedent had for several years prior to his death, been emancipated from the control of his mother, and in the matter of his earnings controlled them for his sole and separate use and support;

(*c*) That at the time of his death, he was not in any manner contributing to the support of his mother, nor had he done so for several years prior to his death?

*Sixth.* Whether or not the understanding between the petitioners the half brothers and sisters of said decedent, as set forth in their petition filed in the Orphans' Court for Frederick County, Maryland, on the 16th day of November, A. D. 1907, and Ida J. Dronenburg, the mother of the said Ephraim G. Harris, deceased, whereby the said petitioners waived their right to administer upon the estate of the decedent, at Ida J. Dronenburg's request, in favor of her husband, Reverdy Dronenburg, in consideration of equal division between the heirs at law and next of kin of said decedent under the laws of the State of Maryland, governing the descents and distributions of all personal assets belonging to said decedent's estate, including all moneys collected or received by the administrator as pecuniary damages for the killing of said decedent, by the Baltimore and Ohio Railroad Company as aforesaid, was a valid contract based upon valuable consideration and binding upon the said Ida J. Dronenburg, the mother of said decedent, that now precludes her as equitable plaintiff from setting up a legal claim to the whole of said five thousand dollars, collected by said administrator, from the Baltimore and Ohio Railroad Company, solely in his official capacity, as administrator, appointed by and under the authority of the Orphans' Court for Frederick County, Maryland, without recourse to legal proceedings against said Baltimore and Ohio Railroad Company.

*Seventh.* Whether or not the sum of fifty-five hundred dollars or any part thereof, collected without recourse to legal proceedings, from the Baltimore and Ohio Railroad Company, a body corporate of the State of Maryland, by Reverdy Dron-

enburg, administrator of the estate of Ephraim G. Harris, solely by virtue of his letters of administration issued to him out of the Orphans' Court for Frederick County, Md., and under which letters he acted when he received and receipted for said money, was received by him as damages for the death of said decedent, and for funeral expenses and medical charges for the benefit of said decedent's estate, and whether or not having so received the said sum of fifty-five hundred dollars, the same became properly assets belonging to the estate of said decedent, and subject to distribution to his heirs at law and next of kin under the jurisdiction and control of the Orphans' Court for Frederick County, Maryland, in accordance with the provisions of the law of the State of Maryland, governing descents and distribution?

*Eighth.* Whether or not Reverdy Dronenburg, collected said sum of fifty-five hundred dollars from the Baltimore and Ohio Railroad Company, a body corporate, solely in his official capacity as administrator of the estate of Ephraim G. Harris, deceased, as pecuniary damages for the benefit of said estate, or whether or not he collected said sum of fifty-five hundred dollars as the personal representative and agent of Ida J. Dronenburg, the mother of said Ephraim G. Harris, deceased, on any specific claim or legal demand or right of her the said Ida J. Dronenburg, made by him on the Baltimore and Ohio Railroad Company, as said personal representative or agent of the said Ida J. Dronenburg, to reimburse her or any pecuniary damages suffered by her either for the loss of her son's services or on account of the loss of his support, considering the fact that at the time of his death the said Ephraim G. Harris was within nine days of being twenty-one years old, and that prior to his death, he had been emancipated from his mother's control and service, and had not been providing for his mother's maintenance and support?

*Ninth.* Whether or not the letters of administration issued to Reverdy Dronenburg, administrator of the estate of Ephraim G. Harris, deceased, by the Orphans' Court for Frederick County, Maryland, did in any manner constitute the said Rev-

erdy Dronenburg in his official capacity as said administrator the personal representative and agent of Ida J. Dronenburg, the mother of said decedent, or enable him in his official capacity as said administrator to act as her personal representative and agent, whereby he was empowered to demand a settlement from the Baltimore and Ohio Railroad Company without recourse to legal proceedings for the death of said decedent, in the way of pecuniary damages suffered by the said Ida J. Dronenburg, if any, for the loss of services and support of her said son, on account of the negligence of the said Baltimore and Ohio Railroad Company, in causing the death of her said son, in the wreck which occurred on said road on the 30th day of December, A. D. 1906?

*Tenth.* Whether or not David Fulton Harris acted as an attorney at law for Reverdy Dronenburg, administrator of the estate of Ephraim G. Harris, and conducted the negotiation with the officials of the Baltimore and Ohio Railroad Company, a body corporate, for the recovery of the damages and funeral expenses and medical attendance charges from the said Baltimore and Ohio Railroad Company, a body corporate, on account of negligence upon the part of said road in causing the death of the said decedent, by the accident and wreck as mentioned in the first issue, and whether or not said negotiations were conducted solely with the view to recover for the use and benefit of said decedent's estate?

*Eleventh.* Whether or not the said David Fulton Harris as attorney for Reverdy Dronenburg, administrator of the estate of Ephraim G. Harris, deceased, did without recourse to legal proceedings, finally obtain a settlement with the Baltimore and Ohio Railroad Company, a body corporate, for the death of said decedent, by which settlement the said administrator received the sum of five thousand dollars as damages, to reimburse the estate of said decedent, and also the sum of five hundred dollars as an allowance for funeral expenses and medical attendance charges by reason of said accident?

*Twelfth.* Whether or not David Fulton Harris and Ernest F. Harris, adults, and half brothers of the said decedent, had

the prior right over Ida J. Dronenburg, the mother of said decedent or Reverdy Dronenburg, the step-father of said decedent, or over any of the other brothers and sisters of said decedent, to administer upon his estate under the administration laws of the State of Maryland.

*Plaintlffs' 2nd Prayer.*—If the Court sitting as a jury shall find that while travelling from Frederick, Md., to Washington, District of Columbia, on the railroad of the Baltimore and Ohio Railroad Company, Ephraim G. Harris was injured in the District of Columbia in a wreck upon the Baltimore and Ohio Railroad in the manner testified to in evidence; and shall further find that the said Ephraim G. Harris survived said injury about twenty-four hours, and died from the effects thereof in the District of Columbia on December 31st, 1906; and shall further find that at the time of his death the said Ehphraim G. Harris was a resident of Frederick County, in the State of Maryland, was unmarried and was without descendants and that his father had died before him and that he was survived by his mother, and ten brothers and sisters of the whole and half blood; and shall further find that Reverdy Dronenburg, the defendant, was appointed administrator of the personal estate of the said Ephraim G. Harris, deceased, by the Orphans' Court of Frederick County, in the State of Maryland, and shall further find that as such administrator the said Reverdy Dronenbury received from the said Baltimore and Ohio Railroad Company the sum of five thousand dollars ($5,000) as testified to in evidence, and signed and delivered to the said Baltimore and Ohio Railroad Company the release upon the consideration of $5,000 as offered in evidence, if the Court, sitting as a jury so find, then, under the issues in this case, the verdict of the Court, sitting as a jury, must be for the plaintiffs on the first issue; and the finding of the Court, sitting as a jury on the first issue must be that the said sum of $5,000 collected by the said Reverdy Dronenburg, administrator of Ephraim G. Harris, deceased, was received by him as such administrator as pecuniary damages for the injury suffered and sustained by said Ephraim G. Harris, in his lifetime, by reason of the

said wreck on the said Baltimore and Ohio Railroad, under the authority vested in such administrator by the laws of Maryland. (*Granted.*)

*Plaintiff's 4th Prayer.*—(If the Court shall find the facts as mentioned in the second prayer) and shall further find that as such administrator the said Reverdy Dronenburg received from the said Baltimore and Ohio Railroad Company the sum of five thousand dollars ($5,000) as testified to in evidence, and signed and delivered to the said Baltimore and Ohio Railroad Company the release upon the consideration of $5,000 as offered in evidence, if the Court sitting as a jury so find, then, under the issues in this case, the verdict of the Court, sitting as a jury, must be for the plaintiff on the second issue and the finding of the Court, sitting as a jury, on the second issue must be that the said sum of $5,000 collected by the said Reverdy Dronenburg, administrator of Ephraim G. Harris, deceased, was received by him as such administrator as assets belonging to the personal estate of said Ephraim G. Harris, deceased, and subject to distribution to his next of kin under the jurisdiction and control of the Orphans' Court of Frederick County and in accordance with the provisions of the law of the State of Maryland governing distribution of personal estate. (*Granted.*)

*Plaintiff's 5th Prayer.*—That under the issues in this case and the evidence the verdict of the Court, sitting as a jury, must be for the plaintiffs on the third issue; and its answer to said third issue must be "It was." (*Granted.*)

*Plaintiff's 6th Prayor.*—That under the issues in this case and the evidence the verdict of the Court, sitting as a jury, must be for the plaintiffs on the fourth issue; and its answer to said fourth issue must be "She did not." (*Granted.*)

Findings of the trial Court on the issues:

On first issue, the Court find for the plaintiffs, and verdict that the whole sum of $5,500 was received by Reverdy Dronenburg, administrator of Ephraim G. Harris, deceased, as pecuniary damages for the severe mental and physical pain and damage both in person and estate suffered by said Ephraim G. Harris caused by the wreck therein referred to.

On the second issue, the Court find for the plaintiffs, and verdict that the whole sum of $5,500 was received by the said Reverdy Dronenburg as such administrator as assets belonging to the personal estate of the said Ephraim G. Harris, deceased, and is subject to distribution to his next of kin and his mother under the jurisdiction and control of the Orphans' Court of Frederick County, Md·, and in accordance with the provisions of the law of the State of Maryland, governing distribution of personal estate.

On third issue, the Court find for the plaintiffs, and verdict, "It was."

On fourth issue, the Court find for the plaintiffs, and verdict, "She is not."

On fifth issue, the Court find for the plaintiffs, and verdict, "She did not."

On sixth issue, the Court find for the plaintiffs, and verdict, "That Ida J. Dronerburg is restricted to one equal share of said sum of money with the brothers and sisters of the said deceased."

(Seventh issue abandoned.)

On eighth issue, the Court find for the plaintiffs, and verdict that Reverdy Dronenburg collected said sum of $5,500 solely in his official capacity as administrator of Ephraim G. Harris, deceased, as pecuniary damages for the benefit of said estate.

(Ninth issue abandoned.)

On tenth issue, the Court find for the plaintiffs, and verdict is "He did."

On eleventh issue, the Court find for the plaintiffs, and verdict is "He did."

(Twelfth issue abandoned.)

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke, Thomas and Worthington, JJ.

*George A. Pearre, Jr.,* (with whom was *Guy W. Steele* on the brief), for the appellant.

*James A. C. Bond* and *Alfred Ritter* (with whom was *Francis Neal Parke* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

Ephraim G. Harris, spoken of in the testimony as E. Gaither Harris, a resident of Frederick County, Maryland, was injured, on the 30th day of December, 1906, in what is known as the Terra Cotta wreck, on the Metropolitan Branch of the Baltimore and Ohio Railroad, in the District of Columbia, from which injuries he died the next day at the Casualty Hospital, in the District of Columbia. The deceased was a dentist, and up to the time of his death was practicing his profession. He was unmarried, within nine days of being of age and died intestate, leaving a mother, Mrs. Dronenburg (who was not dependent upon him, and to whose support he did not contribute in any way), David Fulton Harris, Earnest G. Harris, Charles E. Harris and Ida May Keller, half brothers and sisters, children of his father, Asa I. Ethel, Irene and William T. Harris, brothers and sister, and Lee, Hiram and Edward Dronenburg, half brothers, children of his mother. Letters of administration were issued by the Orphans' Court of Frederick County to Reverdy Dronenburg, stepfather of the deceased, who, on the 9th day of February, 1907, received from the Baltimore and Ohio Railroad Company, through its agent, C. W. Egan, $5,500 in discharge of claims growing out of the injury to and killing of the deceased. David Fulton Harris, Ernest G. Harris, Charles E. Harris and Ida May Keller, half brothers and sister of the deceased, and children of his father, having made claim in the Orphans' Court of Frederick County to their shares, as next of kin of the deceased, of the money received by the administrator from the railroad company, that Court on the 24th of December, 1907, for the purpose of determining whether or not the $5,500 received by the administrator belonged to the estate of the deceased, sent to the Circuit Court for Frederick County for trial twelve issues, and ordered that in the trial of said issues the said David Fulton Harris, Ernest G. Harris, Charles E.

Harris and Ida May Keller should be plaintiffs, and Reverdy Dronenburg, administrator, should be defendant. The case was moved from the Circuit Court for Frederick County to the Circuit Court for Washington County, and from there to the Circuit Court for Carroll County, where it was tried at the last May Term of said Court, and the record of which trial contains eighteen exceptions to the rulings of the Court on the evidence, and one exception to the granting of the plaintiffs' ten prayers, to the overruling by the Court of defendant's special exceptions to the plaintiffs' eleventh prayer, and to the rejection of the defendant's twenty-eight prayers.

Before taking them up in the order in which they appear in the record, a statement of the law applicable to the main facts in the case will contribute to a clearer understanding and a more satisfactory disposition of the numerous exceptions to be considered. In the case of *Stewart* v. *The United Elec. L. & P. Co.*, 104 Md. 333, this Court held that the negligent killing of a person in this State gives rise, under the law of this State, to two causes of action, one by the executor or administrator of the deceased, for such damages as were sustained by him in his lifetime, for the benefit of his estate; and the other by the State, for the use of certain equitable plaintiffs, under secs. 1 and 2 of Art. 67 of the Code (1904), for such damages as they sustained *by the death* of the party injured. The first cause of action is the cause of action the deceased had, and which under the Code survives to his executor or administrator, for the benefit of his estate; while the cause of action under secs. 1 and 2 of Art. 67, is a new cause of action, created by them, and one which the deceased never had. The damages sought to be recovered in the case referred to, and which this Court said the administrator was entitled to recover, was for physical and mental pain and suffering and expense of the deceased, &c.

In the case of *Ash* v. *B. O. Railroad Co.*, 72 Md. 144, Charles F. Weaver, a citizen of the State of Maryland, was killed in the State of West Virginia, by the alleged negligence of the railroad company, and his administratrix, appointed in this State, brought suit for the alleged killing under the law

of West Virginia, which provided for the recovery of damages for the death of a person caused by the wrongful act of another, and further provided that "every such action shall be brought by and in the name of the personal representative of such deceased person, and the amount recovered in every such action shall be distributed to the parties, and in the proportion provided by law, in relation to the distribution of personal estate left by persons dying intestate. And in every such action the jury may give such damages as they deem fair and just, not exceeding $10,000; and the amount so recovered shall not be subject to any debts or liabilities of the deceased; provided that every such action shall be commenced within two years after the death of such deceased person." The Court, ALVEY, C. J., delivering the opinion, after a careful review of the numerous cases bearing upon the question, held that the statute of West Virginia was essentially different from our statute (secs. 1 and 2, Art. 67 of the Code); that the action sought to be maintained was not a common law action but a special action given by the statute, which had no binding force beyond the limits of the State; that the statute of this State could not be made to apply to transactions that occurred in other States, and that as our statute cannot be so extended and applied, "there can be no reason why statutes of other States, not similar in its provisions to our own, though belonging to the same general class of legislation, should be allowed extra-territorial force and operation by the Courts of this State." That an administrator appointed in this State receives his authority to maintain an action in this State from the laws of this State alone, and that "It is according to the laws of this State that he must conduct his administration and make distribution. There is no statute of this State, nor any principle of law known to our Courts, whereby an administrator or executor is given the right to sue and recover in an action like the present, nor is there any law of distribution, in force in this State, that entitles the next of kin or distributees of decedent's estate, to receive the money recovered in an action like the present. And if the present administratrix were

allowed to maintain the action it would be exclusively by virtue of a foreign law, and it would only be by force of that law, that she could be compelled to account for and make distribution of the money recovered.  There is certainly no comity that requires one State to apply and administer the statute law of another in a case such as the present."  See also *State, use of Allen* v. *P. & C. R. R. Co.*, 45 Md. 41.

Secs. 1301, 1302, 1303, of the Code of the District of Columbia provides as follows: Sec. 1301. Liability.  Whenever by an injury done or happening within the limits of the District of Columbia the death of a person shall be caused by the wrongful act, neglect, or default of any person or corporation, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured, or if the person injured be a married woman, have entitled her husband, either separately or by joining with his wife, to maintain an action and recover damages, the person who or corporation which would have been liable if death had not ensued shall be liable to an action for damages for such death, notwithstanding the death of the person injured, even though the death shall have been caused under the circumstances which constitute a felony; and such damages shall be assessed with reference to the injury resulting from such act, neglect, or default causing such death, to the widow and next of kin of such deceased person: Provided, That in no case shall the recovery under this Act exceed the sum of ten thousand dollars: And provided further, That no action shall be maintained under this chapter in any case when the party injured by such wrongful act, neglect, or default has recovered damages therefor during the life of such party.

Sec. 1302.  By whom suit to be brought.  Every such action shall be brought by and in the name of the personal representative of such deceased person, and within one year after the death of the party injured.

Sec. 1303.  Distribution of damages.  The damages recovered in such action shall not be appropriated to the payment of the debts or liabilities of such deceased person, but

shall enure to the benefit of his or her family and be distrib-
uted according to the provisions of the Statute of Distribution
in force in the said District of Columbia."

Under sec. 380 of the Code of the District of Columbia the
mother of the deceased would be entitled to the whole amount
recovered under the provisions of secs. 1301–2–3.

Sec. 329 of the Code of the District of Columbia provides
as follows: "It shall be lawful for any person or persons to
whom letters testamentary or of administration have been
granted by the proper authority in any of the United States or
the territories thereof to maintain any suit or action and to prose-
cute and recover any claim in the District in the same manner
as if the letters testamentary or of administration had been
granted to such person or persons by the proper authority in
the said District; and the letters testamentary or of adminis-
tration, or a copy thereof certified under the seal of the au-
thority granting the same, shall be sufficient evidence to prove
the granting thereof, and that the person or persons, as the
case may be, hath or have administration."

In the case of *Railroad Company* v. *Barron*, 5 Wallace, 90,
in passing upon the statute of Illinois similar to that of the
District of Columbia, the Court held that it is not necessary
for the recovery that the widow and next of kin should have
had a legal claim on the deceased, if he had survived, for
their support, and the ruling in this case was adopted by the
Court of Appeals of the District of Columbia, in the case of
the *District of Columbia* v. *Wilcox*, 4 Appeal Cases, 90, CHIEF
JUSTICE ALVEY delivering the opinion, as the proper construc-
tion of the District of Columbia statute. See also case of *U.
S. Electric Lighting Co.* v. *Sullivan*, 22 Appeal Cases (D. C.)
115. In ths case of *Asphalt Co.* v. *Mackey*, 15 Appeal Cases,
417 (D. C.) the Court said, that the damages recoverable un-
der the sections of the District Code referred to, are not assets
of the estate of the deceased.

It is clear, on the authorities and statutes referred to, (1)
that no action could have been maintained in this State for the
death of the deceased; (2) that an action could have been

maintained by the administrator in this case in the District of Columbia to recover for the death of the deceased; (3) that such damages as might have been recovered for the *death* of the deceased, or any sum of money paid on account of his °*death* would not belong to his estate, and (4) that to justify a recovery for the wrongful killing, under the Code of the District of Columbia, it is not necessary to show that the equitable plaintiff had any claim upon the deceased for support. It is not necessary to determine in this case whether the administrator could have recovered in any form of action for the injuries sustained by the deceased in his lifetime. But it is also clear, on the authorities cited, that if any sum was paid him on account of such injuries, or on account of damages sustained by his estate in consequence thereof, such sum belongs to his estate and should be accounted for by the administrator to the Orphans' Court of Frederick County.

At the trial of the case the defendant first moved to quash the 3rd, 4th, 5th, 6th, 9th and 12th issues, which motion the Court overruled, and the case was then tried before the Court without a jury. The plaintiff, in addition to the facts already stated, proved by C. E. Egan, that he was a general claim agent for the Baltimore and Ohio Railroad Company; that he knew the administrator of the deceased; that he was familiar with the Terra Cotta wreck, and "the date of the settlement made on account of the loss sustained by the death and injury of Mr. Harris;" that he made the settlement of a claim with the administrator and took from him at the time of the payments the following releases:

### Release No. 1.

"Received of the Baltimore & Ohio Railroad Company the sum of Five Thousand $5,000 Dollars in full satisfaction payment and discharge of all claims or demands which I. R. Dronenburg, administrator of the estate of E. Gaither Harris, deceased, now have, or may or can hereafter have against said Railroad Company, or for the death of said E. Gaither Harris arising out of accident to train No. 66 at Terra Cotta, D. C., December 30, 1906, and in consideration of the receipt by me of said sum I do hereby release and forever dis-

charge the said Company from all said claims or demands, as well as from all claims or demands of any kind whatsoever.

Witness my hand and seal this 9th day of Feby., 1907.

| Witness: | R. Dronenburg (Seal) |
| C. W. Egan, | Administrator of the estate of |
| Asa I. Harris, | E. Gaither Harris." |

### Release No. 2.

"Received of the Baltimore and Ohio Railroad Company the sum of $500.00 for all claims which I. R. Dronenburg, administrator, of Frederick, Md., now have, or can hereafter have, against The Baltimore and Ohio Railroad Company, arising out of the death of E. Gaither Harris, of Washington, D. C., who met his death in the accident to train No. 66 at Terra Cotta, D. C., December 30th, 1906, and for all compensation for lost time and all expenses and for pain and suffering endured by the deceased from the time of his injury until death.

And in consideration of the said sum of $500.00 I do hereby release and forever discharge the said The Baltimore and Ohio Railroad Company for all claims and demands of whatsoever kind.

Witness my hand and seal this 9th day of Feby. A. D., 1907.

| Witness. | R. Dronenburg (Seal) |
| C. W. Egan, | Administrator of the estate of |
| Asa I. Harris. | E. Gaither Harris." |

Said witness further testified that "at the time these releases were executed I paid the money to Mr. Dronenburg (the administrator); it was paid on account of the death of his stepson, Mr. Harris."

The questions asked and the testimony offered in the second, third, fourth, fifth, seventh, eighth and tenth exceptions elicited and were evidence tending to show that Egan was advised before he made the settlement that the only person who had any claim against the railroad company for the death of the deceased was Mrs. Dronenburg, and that the settlement had to be made under the laws of the District of Columbia; that the form of the release for $5,000 was the one he usually employed in such cases, and that the form of the release for $500 was the form he generally used, under such circum-

stances, in settlement of claims under the laws of Maryland, and that the claim for the death of the deceased, referred to in the first release, was understood by him and the administrator at the time of the settlement to be the claim of Mrs. Dronenburg under the laws of the District of Columbia.

This evidence was objected to by the plaintiffs on the ground that it was an attempt on the part of the defendant to vary the terms of the first release. The releases offered in evidence are not only receipts but are contracts, and within the rule applicable to other contracts, (2 *Am. & Eng. Ency. of Law*, 745–748 (1 ed.); 19 *Am. & Eng. Ency. of Law*, 1123 (1 ed.), and the general rule is too well established to require citation of authorities, that as between the parties to a contract, and those claiming under them, parol evidence is not admissible to contradict or vary the terms of the written contract. Without determining whether or not the plaintiffs, who are here asserting claim to funds received under and by virtue of the two releases, are within the restrictions of the general rule, (17 *Cyc.*, 752B), the evidence referred to was not offered for the purpose, and could not have had the effect of contradicting or varying the terms of the contract between the administrator and the railroad company, or to show that the $5,000 was not paid for the *death* of the deceased, but was offered to show that the claim for the *death*, in the minds of the parties to the contract, and referred to·in the first release, was the claim of Mrs. Dronenburg under the laws of the District of Columbia, in other words, to identify the subject matter of the contract, which the defendant had a right to do.   17 *Cyc.*, 724; 20 *Am. & Eng. Ency of Law*, 745–746 (1 ed.); *Criss* v. *Withers*, 26 Md. 553; *Stockman* v. *Stockman*, 32 Md. 196; *Fryer* v. *Patrick*, 42 Md. 51.

Responsive answers to the questions in the first, ninth, thirteenth, fourteenth, fifteenth and sixteenth exceptions could not in any way have reflected upon the issues in the case. What Mr. Egan first offered; why the Orphans' Court granted letters of administration to Dronenburg; what he did with the money, and whether or not he has stated an account in the

Orphans' Court, was entirely immaterial, and could not have aided the Court, sitting as a jury, to reach a finding. For the same reasons the Court properly refused to admit the evidence offered in the seventeenth exception. There was no error in the ruling of the Court in the sixth exception. The question was not confined to instructions from the Orphans' Court prior to the settlement with Egan. The evidence offered in the eleventh exception was inadmissible, it was. not in contradiction of anything that D. Fulton Harris had said. The question in the twelfth exception was properly disposed of. It was not accompanied with an offer to show what advice the attorney gave or that witness acted on it. There was no error in the refusal of the Court to allow the questions in the eighteenth exception to be asked, as it was an attempt to contradict D. Fulton Harris in regard to an immaterial matter.

This brings us to the rulings of the Court on the prayers. The further evidence in the case on the part of the plaintiffs is that D. Fulton Harris took some part in the negotiations preliminary to the final settlement between Egan and the administrator; that he was looking after the interests of the estate of the deceased, and that he told Egan he represented the estate; that he made a demand for a settlement for the benefit of the estate, and that he was not present at the final settlement between the administrator and Egan, which was made in the presence of Asa I. Harris. The evidence on the part of the defendant is that the administrator in the settlement represented Mrs. Dronenburg; that D. Fulton Harris did not represent him, or make the demand for settlement on account of the estate; that he was only present during a part of the negotiations; that the $500 was intended to be applied to funeral expenses, &c., and that the $5,000 was for the *death* of the deceased, and was paid in settlement of Mrs. Dronenburg's claim under the laws of the District of Columbia, and that both Egan and the administrator were advised before the settlement that the estate of the deceased had no claim against the railroad company for his death. In all of the evidence, however, there is no evidence to show that the $5,000 was not paid on the ac-

count of the *death* of the deceased, or that the $500 was not paid for the benefit of his estate, as stated in the two releases, or to show that D. Fulton Harris conducted the negotiations or accomplished the settlement with Egan as the attorney for the administrator or the representative of the estate of the deceased.

The first issue is whether or not the $5,500, or any part thereof, was received by the administrator under sec. 103 of Art. 93 of the Code, and the plaintiffs' first prayer instructs the Court, sitting as a jury, that if it finds that the administrator received the $500 and executed the second release, then its finding under the first issue must be that the $500 was received by the administrator as damages for the injury sustained by Ephriam G. Harris in his lifetime, and was properly granted. The release for the $500 and other evidence in the case, shows, as we have stated, that the $500 was paid on account of damages the deceased and his estate sustained, and should therefore be accounted for to the Orphans' Court.

The plaintiffs' second prayer asked the Court for an instruction that if the Court, sitting as a jury, find that the $5,000 was received by the administrator and that he executed the first release,·that then their finding should be for the plaintiffs on the first issue for the $5,000.   The first release shows that the $5,000 was paid on account of the *death* of the deceased, and we have said that an amount recovered or paid on account of the *death* of a party does not belong to his estate, but must be disposed of under the statute of the State where he was killed. Under the Statute of Distribution of the District of Columbia, where the deceased met his death, the $5,000 received by the administrator belongs to his mother, and his estate can have no interest·in it, and the administrator is not required to account for it to the Orphans' Court of Frederick County. Plaintiffs' second prayer should therefore have been rejected.

What we have said in regard to the plaintiffs' first prayer applies to their third prayer, which was properly granted, and what we have said in regard to the plaintiffs' second prayer, also applies to his fourth and fifth prayers, which should have

been rejected.   Plaintiffs' sixth prayer refers to the fourth is-
sue which, if it presents any material issue, it is an issue of law,
and the plaintiffs' sixth prayer when read in connection with
it amounts to an instruction that because of the fact that the
deceased was within nine days of being twenty-one years of age,
and was not rendering his mother any support at the time of
his death, there could have been no recovery on her account.
This is in direct conflict with the ruling in the case of *Railroad
Company* v. *Barron, supra,* and the case of *District of Colum-
bia* v. *Wilcox, supra,* and for that reason should not have been
granted.   In the case of *Cain* v. *Warford,* 3 Md, 454, appealed
from the Orphans' Court of Baltimore City, the Court said,
"The obvious purpose of the sixteenth section is, to enable the
Court to advertise itself of the real facts in the case, but where
there is no dispute in regard to them, as in this case, and noth-
ing but a purely legal question to be determined, it is not in-
cumbent on the Court to order a plenary proceeding."   See
also *Smith et. ux.* v. *Young,* 5 Gill, 197; *Warford* v. *Colvin,* 14
Md. 532; *Williamson* v. *Montgomery,* 40 Md. 355.  While there
can be no modifications in a Court of law of issues sent from
an Orphans' Court, (*Cook* v. *Carr,* 20 Md. 403; *Cook* v. *Cook,*
29 Md, 538;) a jury in civil cases cannot be required to pass
upon questions of law, and it is the duty of the Circuit Courts
to refuse to submit to the jury an issue that presents only a
question of law.

The plaintiffs' seventh prayer should not have been granted
for the reasons stated in regard to plaintiffs' second prayer.
The plaintiffs' ninth prayer permits the Court, sitting as a jury,
to ignore. and disregard the terms of the first release and
should not have been granted, and for the same reason the
plaintiffs' tenth and eleventh prayers should have been rejected.
The defendant's special exception to the plaintiffs' eleventh
prayer was properly overruled, although, as we shall observe
later on, the evidence is not sufficient to justify a finding for
the plaintiffs on the tenth and eleventh issues.   D. Fulton
Harris testified when recalled by the plaintiffs that he was act-
ing as attorney for Mr. Dronenburg during part of the nego-

tiations with Mr. Egan. The defendant's second, third, twelfth, fourteenth and sixteenth prayers were properly rejected. There was evidence offered from which the Court, sitting as a jury, could have found for the plaintiffs on the first and second issues, and the third, fifth and eighth issues present issues of fact.

The defendant's fourth, sixth, ninth, tenth and eleventh prayers should have been granted, the evidence in the case not being sufficient to warrant a finding for the plaintiffs on the third, fifth, eighth, tenth and eleventh issues.

The fourth and sixth issues present issues of law, and should not have been submitted to the Court, sitting as a jury, and the defendant's fifth and seventh prayers were therefore properly rejected, as were the defendant's thirteenth and fifteenth prayers. The defendant's eighth prayer referred to the seventh issue which was abandoned and was therefore properly rejected. The defendant's seventeenth prayer is covered by what has been said in regard to defendant's eleventh prayer and was properly rejected. Defendant's nineteenth, twentieth, twenty-first and twenty-second prayers were properly rejected as they ignore the release for $500. While the twenty-second prayer refers only to the $5,000, the conclusion of the prayer precludes the Court, sitting as a jury, from finding on the issues in favor of the plaintiffs as to the $500, mentioned in the second release. The defendant's twenty-third and twenty-fifth prayers refer to the issues which presented only questions of law and were therefore properly rejected  The defendant's twenty-fourth and twenty-seventh prayers refer to the fifth, tenth and eleventh issues and are covered by what has been said in regard to his sixth, tenth and eleventh prayers, while the twenty-sixth and twenty-eighth prayers refer to the seventh and eighth issues, and there was no error in rejecting them. The seventh issue was abandoned, and the defendant's ninth prayer referring to the eighth issue we have said should have been granted. Defendant's eighteenth prayer, assuming it to be sound as an abstract proposition of law, which however we do not determine, might have been misleading to the

Court, sitting as a jury, and might have been treated as an instruction that notwithstanding the Court, sitting as a jury, should find that the $500 was paid as set forth in the second release the Court, sitting as a jury, could not find for the plaintiffs on any of the issues, and was therefore properly rejected.

The plaintiffs are in the attitude of charging the defendant with having money belonging to the estate which he has failed to account for, and the burden of proof was on them to establish the affirmative of the issues, and the defendant's first prayer should therefore have been granted. *Yingling* v. *Hesson*, 16 Md. 112.

The plaintiffs' special exceptions to the defendant's prayers on the ground that there was no evidence legally sufficient from which the Court, sitting as a jury, could find that the death of the deceased was caused by the negligence of the railroad company should not have been sustained. Some of the issues, if not all of them, assume that the deceased came to his death by reason of the negligence of the railroad company, and it was not necessary therefore for the defendant to prove it. *Brooke* v. *Townshend*, 7 Gill, 26; *Mason* v. *Poulson*, 40 Md. 355. Moreover, it only imposed an additional burden on the defendant, and could not have prejudiced the plaintiffs.

Plaintiffs' special exceptions to the twenty-sixth and twenty eighth prayers of the defendant were properly sustained, on the ground that there was no evidence in the case from which the Court, sitting as a jury, could find that the $500 was paid by the railroad company for the *death* of the deceased, or that the $5,500 was paid for the *death* of the deceased, within the meaning of these prayers. There was evidence given by Mrs. Dronenburg that the $5,000 was paid to her, but there was no evidence as to how the $500 was applied, and the plaintiffs' exception to defendant's twenty-first prayer on that ground was properly sustained. What has been said in regard to the fourth and sixth issues disposes of the objections to them in the defendant's motion to quash. The other issues referred to in the motion were not for the same reason objectionable.

The defendant was not prejudiced by the errors in the rulings in the second, third, fourth, fifth, seventh, eighth and tenth exceptions because there was no evidence in the case to show that the $5,000 mentioned in the first release was not paid on account of the *death* of the deceased, or by the errors in the rulings in the nineteenth exception on the plaintiffs' special exceptions to his prayers, as the prayers were properly rejected on other grounds, and the errors are not therefore reversible errors, but because of the errors pointed out, the rulings in the nineteenth exception, on the second, fourth, fifth, sixth, seventh, ninth, tenth and eleventh prayers of the plaintiffs, and the fourth, sixth, ninth, tenth, eleventh and first prayers of the defendant, must be reversed and a new trial must be awarded.

*Rulings reversed as above specified and new trial awarded.*