WILLIAM DIFFENDERFFER and CHARLES H. G.
HUNGERFORD, by his Guardian and next Friend
WILLIAM DIFFENDERFFER *vs.* ROMULUS R. GRIF-
FITH, JR., and DAVID GRIFFITH, Executors of
SARAH A. GRIFFITH.

*Practice—Death of a Caveator before the Trial of Issues
from an Orphans' Court—Death of Parties litigant in the
Orphans' Court.*

Where issues involving the validity of a last will and testament were
sent from an Orphans' Court to a Court of law for trial, on the
application of two parties, and one of them died before the issues
were tried, leaving a will by which her interest in the estate of the
alleged testatrix, in case the will should be set aside, devolved
upon other persons, it was HELD:

1st. That the Court of law had no power, on the suggestion of the
death, to substitute new parties to the cause in the place of the
deceased; but that the surviving caveator could proceed to the
trial of the issues.

2nd. That the right to prosecute the suit did not devolve on the
executor of the deceased, as her right was purely personal and
died with her; and it was not incumbent on him, as her representa-
tive, to move to dismiss the proceeding, so far as her estate was
concerned.

No special provision is made anywhere in the Code, for making new
parties in the Orphans' Court upon the death of litigants.

APPEAL from the Circuit Court for Anne Arundel
County, on removal from the Baltimore City Court.

This is the second appeal in the matter of issues
involving the validity of the will in controversy in this
case; the first appeal is reported in 50 *Md.*, 466.

6          v. 57.

After the case was then remanded by this Court to the Baltimore City Court for a new trial, new and additional issues were prayed by the same caveators, in the Orphans' Court of Baltimore City, and were sent to the Baltimore City Court to be tried along with the issues there pending on remand from the Court of Appeals. The present case is stated in the opinion of the Court.

. The cause was argued before BARTOL, C. J., GRASON, ROBINSON, IRVING and RITCHIE, J.

*Charles Beasten, Jr.* and *Charles Marshall,* for the appellants.

*Bernard Carter* and *I. Nevett Steele,* for the appellees.

IRVING, J., delivered the opinion of the Court.

It appears from this record, that upon the petition of William Diffenderffer and Sarah A. G. Diffenderffer, his wife, and Charles H. G. Hungerford, an infant, appearing by his guardian and next friend, certain issues, involving the validity of the last will and testament of Sarah A. Griffith, were framed by the Orphans' Court of Baltimore City, and sent to the Baltimore City Court for trial. Upon affidavit, that a fair and impartial trial could not be had in that Court, the issues were removed from that Court to the Circuit Court for Anne Arundel County for trial. " The issues came on for trial, and after the jury had been struck, and three of the jurymen already sworn, the counsel for the defendants suggested the death of Sarah A. G. Diffenderffer, one of the plaintiffs, and objected to the trial being further proceeded with." This suggestion of death was made in writing; and an agreement of facts in these words was filed: "it is agreed that the last will and testament of Mrs. Sarah A. G. Diffenderffer leaves

all her property, real and personal to her husband, William Diffenderffer for life, without impeachment of waste, and after his death to their children, and if those children do not survive him, then to Charles H. S. Hungerford; and Mrs. Diffenderffer died February 20th, 1880, leaving three children now living." Upon this suggestion and agreement of facts being filed, the Circuit Court for Anne Arundel County, on the 25th of October, 1880, passed an order remanding the record "to the Orphans' Court of Baltimore City, in order that such issues as are hereinbefore indicated, may be applied for and transmitted, or that such proceedings in the case may be had as to the Court may seem proper, or as the parties in interest may be advised are proper to be taken."

This order forms the subject of the first exception on this appeal.

The theory upon which this order was passed, and upon which it has been defended in this Court, is concisely stated by the learned Court in the brief opinion prefacing the order. "As Mrs. Diffenderffer has, since the granting and transmission of said issues for trial, died, leaving a will, by which her interest in the estate of the alleged testatrix, in case the will should be set aside, has devolved upon other parties, the trial of these issues ought not now to be proceeded with until the devisees of Mrs. Diffenderffer shall have the opportunity to file an application for issues, or in some way be brought into the case, or until the said Hungerford shall have the opportunity of asking for separate issues. There seems to be no provision made by law for such a state of things as has arisen in this case, and we are of opinion where issues are granted on the joint application of two parties, and one of them dies before the issues are tried, the other party cannot proceed to trial thereof, and that the record must be remanded to the Orphans' Court," &c.

In determining that the Court trying the issues had no power on the suggestion of death of one of the parties,

plaintiff to substitute new parties to the cause in place of the deceased, we think the Court was entirely right. The Circuit Court had no original jurisdiction in the premises. It was not acting in the exercise of its ordinary powers as a Court of general jurisdiction. It could not remodel *the issues*, or change them in any particular. *Pegg vs. Warford*, 4 *Md.*, 395; *Cook vs. Carr and Wife*, 20 *Md.*, 410. The power of the Court and its duty was to see that a verdict, upon the issues propounded for inquiry before a jury was reached by legal steps, and competent and legal evidence. It was the province of the Court to decide all questions necessarily incidental to the bringing to trial and verdict; and when a verdict was obtained, to certify it to the Orphans' Court, whence the issues came.

It is clear that the Second Article of the Code of Public General Laws, title, Abatement, applies only to actions at law, strictly so-called. Article sixteen of the Code provides for contingencies in equity proceedings, like that arising in this case, by authorizing the making of new parties *where the right survives.* No special provision is made anywhere in the Code, for making new parties in the Orphans' Court, upon the death of litigants. And though there are cases in that Court, where from the nature of the proceeding, the Court might be held to have the power to admit new parties, this case is not one of them; and if the remanding had been submitted to, a new proceeding from the start would be necessary. The effect of the Court's ruling and order, is to put an end to the pending proceeding entirely, and put the surviving caveator or plaintiff, to the necessity and expense of a new proceeding, issues and transcript to the Circuit Court. In so ruling, we think there was error. We are all of opinion that in a case of this kind, the death of one of two or more caveators, who had united in applying for issues, and on whose application such issues were framed and transmitted for trial, ought not to abate the proceeding

and subject the survivor or survivors to the cost and delays incident to a new proceeding. It is not consonant with reason and sound policy, that it should produce such a result in such a case. The true theory of the proceeding, the right of parties to it, and the necessary powers of the Court having the trial in charge, does not, in our opinion, involve any such consequences. Upon the death of one of several caveators, who have voluntarily or by coercive order of the Orphans' Court, united in prosecuting a contest of this nature, the survivor or survivors should be allowed to proceed with the cause ; and the Court having the conduct of the trial must, of necessity, have the power to make the necessary entry to show by whom the case was prosecuted, and to obtain a legal verdict. This proceeding is, in no way, analogous to a suit upon a cause of action in which the parties plaintiff have a joint or inseparable interest, and where joinder is necessary to a proper and final decision of the question at issue. Each of the parties plaintiff in this case, in virtue of certain property rights, in the event of the will being set aside, had a right to caveat the will, and have issues framed for trial by jury. Their interests were not joint in any respect, but separate and distinct. Having a common interest in having the will overthrown, they united in proceedings attacking it, as they had a right to do ; and as they would have been compelled to do, if they had instituted separate proceedings for the same object. *Pegg vs. Warford,* 4 *Md.* However unwilling to a consolidation of their separate proceedings in the Orphans' Court to set aside the will ; to prevent different verdicts by possibility from different juries, the Court would have compelled them to unite in the contest, as they had a common object in view. If these parties had been coerced into such union, and one had afterwards died, by the rule adopted by the lower Court in this instance, the suit would abate notwithstanding the manifest injustice done to the survivor. Or if

one of the parties had abandoned the case, and dismissed the proceeding as to him, as he had the undoubted right to do, (*Vide Price vs. Taylor,* 21 *Md.*, 356,) the same result must by this rule have ensued, and the case be abated, because it is said the parties prosecuting were not exactly the same as when the case left the Orphans' Court. In our opinion this cannot be. The dropping out of one of the parties plaintiff from the cause by death or voluntary withdrawal, does not work any change in the *issues* to be tried. They affected the will attacked, irrespective of the parties caveating it. The change in the entry by noting the death or abandonment of the case by one party is not within the letter or meaning of the decisions relied on by appellees in support of their view. *Pegg vs. Warford,* and *Cook vs. Carr and Wife,* only decided that the *issues* could not be changed after they were framed, and had been transmitted to the Circuit Court for trial by jury.

It is not contended that the case is one, which the executor or administrator of the devisees, distributees or legatees, could be compelled to take up and prosecute. In fact, we regard it as conceded that no such duty or right devolves upon the executor or administrator as such, in respect to such suit or proceeding. Nor do we understand it to be contended, that it is a proceeding to which the heir-at-law, devisee, legatee or distributee of the deceased caveator succeeds by descent, so that he can be brought in and made a party by suggestion and motion without consent. This being so, it would seem to be clear, that the filing of the caveat was the exercise of a purely personal privilege or right growing out of a possible pecuniary or property interest, in the event of a successful termination of the attack on the will. Such proceeding, therefore, on the death of the plaintiff, so far as that plaintiff and his interest in the suit as such must die with him. The person who would, on the death of the caveator,

succeed to the same rights of property in the event of
the overthrow of the will, would, if there were no pend-
ing proceeding, have a right to caveat and ask for issues;
but while there was a competent and proper plaintiff
prosecuting proper issues, as we think was the case here,
he would, under the decisions already cited, be precluded
from proceeding until this case was settled; and unless
he attacked the will on different grounds, and procured
wholly different issues, he would be bound by the result
of this proceeding and judgment thereon by the Orphans'
Court, as his ancestor would have been, had he not origi-
nally united in the caveat. We think there was no neces-
sity to send the case back to the Orphans' Court to give
such person or persons an opportunity of taking proceed-
ing, of which opportunity they might not desire to avail
themselves; and of which in this case they did not wish
to avail themselves, as we may reasonably infer from the
lapse of time after the death of Mrs. Diffenderffer, with-
out any effort to be made parties; and from the motion
of the husband and executor of Mrs. Diffenderffer, to dis-
miss the case as to her estate. According to our view an
effectual trial could be had with the surviving caveator
as plaintiff; and we do not see good ground for arrest-
ing the trial as was done, for the reasons assigned, either
on the motion of the plaintiff or of the defendant. It
was in our opinion within the necessary powers of the
Court, upon the suggestion of death being made, to have
not only entered that suggestion of death on the docket
of the Court; but also to have ordered the trial to pro-
ceed; and to have sworn the jury to try the issues as
between the surviving caveator or caveators as plaintiffs,
and the defendant of record. The jurors who had been
sworn when the motion or suggestion was made, could
and should have been re-sworn, so that they should be dis-
tinctly sworn to try the issues between the parties as the
amended record presented the case. The jury had noth-

ing to do with the parties, their only duty was to answer the inquiries put by the issues. The verdict in a case like this, under such circumstances, would be binding; and when certified and acted on by the Orphans' Court would have been conclusive on everybody so far as the issues found affected the validity of the will. *Pegg vs. Warford,* 4 *Md.,* 394; *Cecil vs. Cecil,* 19 *Md.,* 72.

The view we have taken of the first exception relieves us from discussing or passing upon the questions raised by the second exception. Having decided that the right to prosecute this suit as executor of Mrs. Diffenderffer has not devolved upon the appellant, her husband, because her right was purely personal and died with her; it was not incumbent on him, as her representative, to make the motion to dismiss the proceeding so far as her estate was concerned; and we cannot see how any injury has been sustained by the overruling of his motion in that behalf, being a party to the record, and it not appearing in what right it was competent for him at a proper time to dismiss the case as to himself. Whether, as to himself that motion came too late, we need not now decide. The cause will be remanded for a new trial, and if he so desires, it will be proper for him to so move, and the Court will so allow.

*Reversed and new trial granted.*

(Decided 30th June, 1881.)