LUCILLE DASHIELL HILL ET AL. *v.* RAYMOND
CALVIN LEWIS, PERSONAL REPRESENTATIVE OF
ESTATE OF CATHERINE DASHIELL
KOHLHEIM LEWIS

[No. 710, September Term, 1973.]

*Decided April 24, 1974.*

122

The cause was argued before ORTH, C. J., and DAVIDSON and MOORE, JJ.

*Elsbeth L. Bothe,* with whom were *Bernard G. Link* and *Thomas S. Simpkins* on the brief, for appellants.

*Kenneth V. Heland* and *Alexander G. Jones,* with whom was *Vaughn E. Richardson* on the brief, for appellee.

* Note: *Certiorari* denied, Court of Appeals of Maryland, July 25, 1974.

ORTH, C. J., delivered the opinion of the Court.

I

Catherine Dashiell Kohlheim Lewis (Catherine) was found dead in the basement of her residence in Princess Anne, Somerset County, Maryland on 1 January 1972. She died without issue but left surviving her a husband, Raymond Calvin Lewis (Raymond), whom she married 14 April 1971, and two sisters, Lucille Dashiell Hill and Isabel Dashiell Shores (the Sisters). Catherine died testate. Her will, disposing of an estate appraised at $124,716.93, and duly admitted to probate in the Orphans' Court for Somerset County, named Raymond personal representative and devised to him real property, consisting of a 300 acre farm known as Goshen, appraised at $75,550. The rest and residue of the estate was devised and bequeathed to the sisters in equal shares. Raymond, as duly appointed personal representative, filed an administration account about 11 July 1972. On 1 August 1972 the Sisters excepted to the account with respect to any distributions, commissions, or allowances to Raymond and prayed for his removal as personal representative. They alleged that Catherine did not die of natural causes, and requested that issues of fact raised by their petition be transmitted to a court of law for determination. Raymond answered the petition, averring that Catherine died as a result of an accident, and prayed that the petition be dismissed. He moved for a denial of the request for determination of any issues by a court of law. By orders filed 22 August 1972 the Orphans' Court denied the motion to dismiss the petition of the Sisters, refused to approve the administration account, and did not approve the motion for denial of the request for a determination of issues by a law court. The Sisters thereupon, on 11 September 1972, submitted the following issue of fact for determination:

"Did Raymond Lewis murder Catherine Dash-iell Lewis?"

On 26 September 1972 the Orphans' Court entered an

order approving the issues for determination by the Circuit Court for Somerset County. On 8 November 1972, upon Raymond's suggestion, the case was removed to the Circuit Court for Dorchester County, and the record was promptly transmitted to that court.

On 24 November 1972 Raymond moved for summary judgment. The motion was supported by seven affidavits. A report of the autopsy performed on Catherine was filed, depositions of various witnesses were taken, and interrogatories demanded and answered. The motion for summary judgment was answered on 17 July 1973 and further answered on 24 July. On the latter date there was a hearing on the motion. On 29 August the Circuit Court for Dorchester County ordered "that the Motion for Summary Judgment filed by Raymond C. Lewis, personal representative of the estate of Catherine Dashiell Kohlheim Lewis, be and it is hereby granted, and the Clerk is directed to certify to the Orphans' Court in answer to the issue presented a finding by this Court of 'No'." The Sisters noted an appeal "from the order entered in this action on August 29, 1973." They question the authority of the court below to grant a motion for a summary judgment with respect to an issue transmitted for determination to it from an orphans' court, and claim that even if the court had such authority, it erred in granting the motion in the circumstances here.

## II

It is settled law of this State, *Chase v. Jenifer*, 219 Md. 564, 567, that neither a murderer, nor his heirs or representatives, can share in the estate of the person murdered, under the statutes of descent and distribution, or otherwise, *Price v. Hitaffer*, 164 Md. 505.[1] See *United Life*

---

1. The opinion was rested upon the fundamental maxim that one cannot profit from his own wrong, and on a broad ground of the public policy of the common law. "No one shall be permitted to profit by his own fraud, to take advantage of his own wrong, to found any claim upon his own iniquity, or to acquire property by his own crime." It followed that "If a legatee wilfully murders the testator, although no statute has enacted a forfeiture, these principles will prevent his reaping the fruits of his crime." *Price v. Hitaffer, supra*, at 511, quoting Phelps, *Judicial Equity* (1894) 349.

The opinion in *Price* further held that the constitutional and statutory

*and Accident Insurance Company v. Prostic,* 169 Md. 535; *Schmeizl v. Schmeizl,* 184 Md. 584; *Schmeizl v. Schmeizl,* 186 Md. 371. Actual conviction of murder is not a requisite for the application of the rule. *Chase v. Jenifer, supra,* at 566-567.

Code, Art. 93, § 2-105, concerning the orphans' courts, provides:

> "In any controversy in the court, issues of fact may be determined by the court or, at the request of any interested person made within such time as may be determined by the court, by a court of law. Where such request is made before the court has determined the issue of fact, the court shall transmit the issues to a court of law. After the determination of the issue, whether by the court or after transmission to a court of law, the court shall enter an appropriate judgment or decree. This section shall not apply where the estate is administered under the jurisdiction of a court having general equity jurisdiction."

An issue may be sent to a law court for trial only when (1) the orphans' court has jurisdiction of the subject, (2) the question is properly before the orphans' court, and (3) the issue is relevant and material to the question before the orphans' court. *Myers v. Hart,* 248 Md. 443; *Ades v. Norins,* 204 Md. 267; *Fidelity Trust Company v. Barrett,* 186 Md. 483. It is clear that the issue here met these tests. Whether a person had forfeited his right to inherit from a decedent, under a will, or as an heir, or as a distributee of an intestate estate, is a question which may be raised in an orphans' court. *Schmeizl v. Schmeizl,* 184 Md. at 599. The question whether Raymond forfeited his right to inherit from Catherine was properly before the orphans' court. The issue

---

provisions against corruption of blood and forfeiture for conviction of crime do not enable a murderer to claim as heir or next of kin of the person murdered, since the fact that one is prevented from acquiring property does not involve a forfeiture of his property. "By virtue of his act he is prevented from acquiring property which he would otherwise have acquired, but does not forfeit an estate which he possessed." *Id.,* at 508.

was relevant and material to that question. It was ancillary to relief in a matter over which the orphans' court had jurisdiction to decide, *Goldsborough v. De Witt*, 169 Md. 463, but was not wholly within its discretion, *Vickers v. Starcher*, 175 Md. 522. It was a single, definite, and material question framed from the allegations of a petition and the answer thereto, *Ades v. Norins, supra*, at 272. It was properly submitted to the law court.

> "In answering issues the circuit court acts, strictly speaking, not as an appellate court nor in the exercise of its original jurisdiction. It acts rather as: '. . . a tribunal ancillary to the orphans' court, whose aid is invoked for the single purpose of determining issues of fact submitted to it by the orphans' court for its guidance in dealing with some matter before it.' " *Ades v. Norins, supra*, at 273, quoting *Holland v. Enright*, 167 Md. 604, 607.

In other words, the law court has limited jurisdiction under the statute.[2] *Holland v. Enright*, 169 Md. 390. It has no power to review the proceedings of the orphans' court wherein the issues were framed, or to consider the sufficiency of the pleadings upon which the issues were founded.[3] "The general rule has been adopted that the trial court has no right to revoke or modify issues after they have been

---

2. The legislative history of the statute began with Acts 1777, Feb. Sess., ch. 8, when the General Assembly in establishing the Orphans' Court system following the adoption of the Constitution of 1776, empowered each orphans' court to direct any issue to be tried by plenary proceeding and to call a jury of twelve freeholders of the county to assist in the determination of the issue. By Acts 1798, ch. 101, subchapter 15, § 17, the law was revised by requiring the orphans' court, at the election of either party to a controversy, to direct issues to be sent to any court of law that might be most convenient for the trial thereof. See *Forsythe v. Baker*, 180 Md. 144, 147-148. Acts 1886, ch. 498 made no substantive change. Acts 1969, ch. 3, § 1, enacted the law as it appears today.

3. "Of course, any issues may be abandoned in the trial court by consent of the parties to the proceeding. *Pegg v. Warford*, 4 Md. 385, 396. But if either party desires to raise any question as to the propriety or regularity of the proceedings by which the issues were framed, or the sufficiency of the pleadings to support the issues, he can do so only by taking an appeal from the framing order to the court of appeals, for the question can be raised in no other way." *Forsythe v. Baker, supra*, at 149-150. See Courts and Judicial Proceedings Article §§ 12-501 and 12-502.

transmitted by the Orphans' Court." *Forsythe v. Baker*, 180 Md. 144, 149. On the other hand, it is well settled that after issues have been sent to a court of law for trial, the orphans' court has no right to revoke or modify them, for the functions of the orphans' court are suspended until the verdict is returned by the trial court. *Idem*, citing *Pegg v. Warford*, 4 Md. 385, 396; *Schmidt v. Johnston*, 154 Md. 125, 133; *Greenhawk v. Quimby*, 168 Md. 396; *Baldwin v. Hopkins*, 172 Md. 219, 232. Further, the law is firmly established that the orphans' court is bound to accept the findings of the trier of fact in the trial court as conclusive, and to make them effective by proper judgment or decree. This is the clear intent of the provision: "After the determination of the issue, whether by the [orphans'] court or after transmission to a court of law, the [orphans'] court shall enter an appropriate judgment or decree." Code, Art. 93, § 2-105. *Forsythe v. Baker, supra*, at 149, citing *Flaks v. Flaks*, 173 Md. 358.

Despite the settled state of much of the law with respect to issues submitted by an orphans' court to a court of law, the Sisters bring into question the conduct of the trial in a law court of issues so propounded by an orphans' court. The Court said in *Forsythe v. Baker, supra*, at 149:

> "Unless the issues are wholly immaterial, or contain solely questions of law, or are for any reason so defective that no reasoned verdict could be rendered upon them, it is the imperative duty of the trial court to submit the issues to the jury."

The Sisters construe this as prohibiting the trial court from granting a motion for summary judgment as to the issues. We think it must be considered within the context in which it was made. The statement was made concerning the lack of power in the trial court to review the proceedings of the orphans' court wherein the issues were framed or to consider the sufficiency of the pleadings upon which the issues were founded. It led to the conclusion that the general rule is that the trial court has no right to revoke or modify issues after they have been transmitted. The statement in this context

supports the general rule, but goes no further. Earlier in *Forsythe* the Court discussed the province of the trial court when its aid was invoked as a tribunal ancillary to the orphans' court. It is, the Court said, at 148-149, "* * * merely to submit the issues of fact to the jury *in accordance with legal procedure and upon competent evidence,* and upon rendition of the verdict to certify it to the Orphans' Court." (emphasis supplied) The Court had said the same thing in a slightly different way in *Diffenderffer v. Griffith,* 57 Md. 81, 84:

> "The power of the court and its duty was to see that a verdict, upon the issues propounded for inquiry before a jury was reached *by legal steps, and competent and legal evidence.* It was the province of the court to decide all questions necessarily incidental to the bringing to trial and verdict; and when a verdict was obtained, to certify it to the Orphans' Court, whence the issues came." (emphasis supplied)

We think that when the Court said that it was the duty of the trial court to submit the issues to the jury "in accordance with legal procedure and upon competent evidence", and to see that a verdict upon the issues was reached "by legal steps and competent and legal evidence", such "legal procedure" and such "legal steps" contemplated the rules generally governing the conduct of trials in the law court. Necessarily, we believe, this would include the Maryland Rules of Practice and Procedure, as now in effect, with respect to the trial of cases in a court of law. Rule 610 concerns "Summary Judgment", and it applies to procedures at law. Rule 1 a 1. A motion for a summary judgment may be made in an "action", Rule 610 a 1, and an "action" includes "all the steps by which a party seeks to enforce any right in a court of law or equity", Rule 5 a.[4] "In an action, a party asserting a claim, * * * or a party against whom a

---

4. "Judgment" includes a judgment at law or other act or order of court final in its nature. Rule 5 o. The court may render judgment on part of a claim, upon such terms as it thinks fit. Rule 610 d 3.

claim is asserted, may at any time make a motion for a summary judgment in his favor * * *." Rule 610 a 1. When issues are transmitted to a law court under Code, Art. 93, § 2-105, we think that there is a party asserting a claim and a party against whom a claim is asserted within the contemplation of Rule 610. The short of it is that we believe a law court has authority to grant a motion for a summary judgment, as provided by Rule 610, in an action before it on issues transmitted by an orphans' court.

There is support for our view. When an orphans' court sends issues to a court of law for trial, said the Court in *Schmeizl v. Schmeizl,* 184 Md. at 598, "[t]he court of law has the same powers, with respect to the jury [5] and the verdict, as in an ordinary action, including 'power to direct the jury and grant a new trial.' " [6] This doctrine was applied in *Mc-Intyre v. Saltysiak,* 205 Md. 415, where the Court affirmed rulings of the court below directing verdicts on all issues sustaining the validity of a will, for the reason that caveators had not produced sufficient evidence to justify submitting the issues to the jury. The Court said, at 424:

> "Whether sufficient evidence was offered to justify the submission of issues to the jury is a question of law for the court. If there is not sufficient evidence and the jury would only be left to speculation and conjecture on the issues submitted, the court should refuse to submit such issues, should direct a verdict, and withdraw those issues from the jury."

The Court made clear in *Schmeizl,* 184 Md. at 597-598, that the trial rules of the Rules of Practice and Procedure, as then in effect, were applicable not only in an ordinary action at law but, as far as may be, in any other proceeding at law,

---

5. A jury may be waived. *Houston v. Wilcox,* 121 Md. 91, 100.

6. The appellate court may reverse a determination on issues "without a new trial", *Johnston v. Schmidt,* 158 Md. 555, 574, and in so doing may authorize the lower court to "direct a finding of the issues in conformity with this opinion and certify such finding" to the orphans' court, *Smith v. Biggs,* 171 Md. 528, 535-536.

including, specifically, issues from an orphans' court. The rules as to a directed verdict, now Md. Rule 552, and judgment N.O.V., now Md. Rule 563, were applicable, said the Court, to any proceeding tried by a jury.[7] And it declared that the word "judgment" as used in the rule concerning judgment N.O.V. had "no narrow technical meaning; it includes a 'decision' or 'determination', on issues from the Orphans' Court or in any other proceeding at law." "Judgment" is used in the sense of the judicial determination of a court upon a matter within its jurisdiction. *Id.*, at 598. Thus, the Court concluded, for the purposes of the rule as to judgment N.O.V., "there is no material difference between the decision or determination of a court of law on issues from the Orphans' Court and an ordinary judgment at law * * *." Idem. See *Stockslager v. Hartle*, 200 Md. 544; *Drury v. King*, 182 Md. 64; *Malone v. Malone*, 148 Md. 200; *Kelley v. Stanton*, 141 Md. 380. For other cases involving issues from an orphans' court in which a directed verdict or judgment N.O.V. was concerned, see *Nalley v. Nalley*, 253 Md. 197; *Jackson v. Jackson*, 249 Md. 170; *Waple v. Hall*, 248 Md. 642; *Shearer v. Healy*, 247 Md. 11; *Sachs v. Little*, 245 Md. 343; *Ingalls v. Trustees*, 244 Md. 243; *Giardina v. Wannen*, 228 Md. 116; *Hughes v. Averza*, 223 Md. 12; *West v. Fidelity-Balto. Bank*, 219 Md. 258; *Kuenne v. Kuenne*, 219 Md. 101; *Sellers v. Qualls*, 206 Md. 58.

The Sisters, conceding that "there are principles common to consideration of a motion for a summary judgment and for a directed verdict", attempt to distinguish the one from the other. They postulate: "The motion for summary judgment procedure is for the purpose of determining, without regard to the sufficiency of the evidence which might be produced at trial, whether there is an issue of fact to be tried, * * * while hearing on a motion for directed verdict is to determine whether there has been evidence

---

7. Rule 563 d provides: "This Rule shall not apply to cases tried before the court without a jury." The present Rule 535, permitting dismissal of an action, applies in terms to "any action tried by the court without a jury at law or in equity * * *."

presented at the trial which is legally sufficient (however slight) to enable the fact finder to deliberate a verdict which is in accord with applicable law." They conclude: "It does not follow that because a court may after hearing evidence direct a verdict on issues certified by the Orphans' Court that the law court is empowered to grant a motion for summary judgment." As we have indicated, we do not see it that way.

Powers, J., speaking for the Court, pointed out in *Knisley v. Keller*, 11 Md. App. 269, 272, citing *Lipscomb v. Hess*, 255 Md. 109, 118, and *Strickler Engineering Corp. v. Seminar, Inc.*, 210 Md. 93, 100, that the summary judgment procedure is not a substitute for a trial but merely a hearing to decide whether a trial is necessary. Such procedure provides a preview of the essential facts which would be submitted at a trial where it could be determined whether the facts were sufficient at law for the case to go to the jury. The facts presented by affidavit or deposition in the summary judgment procedure are to be judged by the same standards as the facts received at a trial. "The function of the judge [with regard to a motion for summary judgment] is much the same as that he performs at the close of all the evidence in a jury trial when motions for directed verdict or requests for peremptory instructions require him to determine whether an issue requires resolution by a jury, or is to be decided by the court as a matter of law." 11 Md. App. at 272-273, quoted with approval in *Salisbury Beauty Schools v. State Board*, 268 Md. 32, 41. We considered and rejected, in *Knisley*, the argument that additional testimony at a trial might lead to a different result than that reached in the summary judgment proceeding, stating that parties are required to raise whatever issues they desire to interpose to the motion by affidavit or deposition at or before the time of hearing in the trial court. *Id.*, at 272. We do not believe that a summary judgment procedure with respect to issues from an orphans' court places any more burden on a party than it does with respect to an ordinary action at law, or is in any way unfair or unreasonably prejudicial.

The Sisters take the position that a summary judgment

procedure encroaches upon the propriety of the issue presented, which the law court may not question. We do not agree. The summary judgment procedure as to an issue does not go to the propriety of that issue as submitted by the orphans' court to the law court, but to the sufficiency of the evidence, at least to the extent of showing a genuine dispute, much the same, as we have indicated, as with respect to a motion for a directed verdict. The summary judgment procedure goes no more to the propriety of the issue as submitted than does a motion for a directed verdict.

## III

Having determined that the trial court had power to grant a motion for a summary judgment in an action before it on issues transmitted by an orphans' court, we now consider the propriety of the grant of the motion in the circumstances here.

The summary judgment procedure as established by Md. Rule 610 was discussed in *Salisbury Beauty Schools v. State Board, supra,* at 40:

> " The function of the summary judgment procedure is not to try the case or decide the issues of fact raised; it is merely to determine whether or not an issue of fact is to be tried and if there is none, to cause judgment to be rendered accordingly. * * * The purpose of the hearing on the motion, at the trial level, is to decide if a real dispute as to material facts does exist and if the pleadings, depositions, admissions and affidavits (if any) show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment should be granted.[8] * * *

---

**8.** Md. Rule 610 d 1 provides: "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genunie dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."

> A bare allegation in a general way that there is a dispute as to material facts is never sufficient to defeat a motion for summary judgment. * * * [N]or is the mere filing of an Answer to a bill of complaint necessarily fatal to a motion for summary judgment, particularly where the Answer does not warrant a finding that there is a genuine dispute as to material facts between the parties. * * *

> Even when it is shown that there is a dispute as to a fact, when the resolution of that factual dispute is not material to the controversy, such dispute does not prevent the entry of summary judgment. * * * [A] dispute as to facts relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute does not prevent the entry of summary judgment. * * *." (citation omitted)

On the other hand, even if the underlying facts are not disputed but are susceptible of more than one reasonable inference, the party against whom the inference is sought to be drawn is entitled to the inference most favorable to his contention when the court is considering a motion to grant a summary judgment. *Ford v. Loret*, 258 Md. 110, 118; *Reeves v. Howar*, 244 Md. 83, 89, citing *Roland v. Lloyd E. Mitchell, Inc.*, 221 Md. 11, 14, which was cited with approval and followed in *Mayor and City Council of Baltimore v. Allied Contractors, Inc.*, 236 Md. 534, 544.

The motion for summary judgment filed in this case on 24 November 1972 was in accord with Md. Rule 610. It was supported by seven affidavits. On 5 December 1972 a copy of the report of the autopsy performed on Catherine was filed. Interrogatories were demanded of the Sisters by Raymond on 26 January 1973 and answered on 30 April. Depositions of Raymond, Ida A. Lewis, his mother, and William W. Dotson, his brother-in-law, were taken and filed on 17 July. The same day the Sisters answered the motion for summary judgment, alleging that there was "a genuine dispute between the parties as to many material facts at issue so as

to require that the matter proceed to a hearing on the merits." A copy of the depositions taken were filed in support of the allegation. On 24 July a further answer was filed by the Sisters, raising the additional ground that the court was without authority to entertain the motion. The same day hearing on the motion was held. On 29 August the court granted the motion and directed the Clerk to certify to the orphans' court the answer "No" to the issue.[9]

We have reviewed the documents submitted in connection with the motion — the affidavits, the depositions, the autopsy protocol.[10] They presented no matters or material facts which were sufficient to show a genuine dispute nor were the underlying facts susceptible of more than one *reasonable* inference, and that was that Raymond did not murder Catherine. The trial court in determining the motion was of the opinion that there existed no real dispute as to a material fact. It said: "The bare allegation that [Raymond] murdered his wife is not sufficient to defeat the Motion for Summary Judgment. That is merely a conclusion based on suspicion, and this Court has not found any material fact which is in dispute that could reasonably support that conclusion. Certainly, on the evidence submitted in connection with the motion, which this Court presumes to be all the evidence available,[11] the case would be taken from the

9. Raymond suggests that because the Sisters failed to controvert by affidavit the statements of fact in the affidavits filed in support of the motion, they admitted all statements of fact in the affidavits of the moving party. Rule 610 a 3 so provides "where the motion is required to be supported by affidavit." The motion is "required" to be supported by affidavit "when filed with the pleading asserting the claim or before the adverse party has filed his initial pleading to it; . . . ." We do not believe that, in the circumstances here, the motion was required to be supported by affidavit within the contemplation of the Rule. Thus, the Sisters had the option of filing an affidavit or not, the Rule prescribing: "In all other cases the adverse party may file an opposing affidavit at or before the time of the hearing."

10. Their content is carefully summarized in the Sisters' brief.

11. The party opposing the motion must show by facts, which would be admissible in evidence, that there is a real dispute between the parties. *Melbourne v. Griffith,* 263 Md. 486; *Knisley v. Keller, supra,* at 272. The facts offered in opposition to the granting of a motion for summary judgment must not only be admissible in evidence but must be detailed and precise. *Davis v. Montgomery County,* 267 Md. 456; *Shaffer v. Lohr,* 264 Md. 397. Evidentiary facts, not conclusions, must be produced to serve the function of showing a genuine dispute of a material fact, and they must be full, certain and exact. *Wyand v. Patterson Agency Inc.,* 266 Md. 456.

jury. Resolving all conflicts in the evidence, and these conflicts are minor and inconsequential, in favor of the [Sisters], and assuming the truth of the evidence produced by them as well as all reasonable inferences in their favor, a jury would have to engage in the wildest speculation in order to find support for [the Sisters'] position." The court answered the critical questions whether there existed a genuine dispute as to a material fact, and, if not, what the ruling of law should be upon those undisputed facts, *Brewer v. Mele*, 267 Md. 437, and, we believe, answered them correctly. Resolving all conflicts in favor of the Sisters, and drawing all reasonable inferences favorable to them, the evidence before the trial court left no room for reasonable minds to differ. The judge below was correct in ruling as a matter of law that Raymond did not murder his wife.[12]

> *Order of 29 August 1973 affirmed; appellants to pay costs.*

---

**12.** The autopsy report gave as the cause of death, "Aspiration of Blood into Larynx, Trachea and Bronchi, due to Recent Fracture of Nose (Fall)." The affidavits were those of Maryland State policemen, the Sheriff of Somerset County, the State's Attorney for Somerset County, and an officer of the Princess Anne Police Department, all of whom participated in an investigation of Catherine's death. The only reasonable inference from the investigations conducted by the Maryland State Police, the Princess Anne Police Department, the Sheriff of Somerset County and the State's Attorney for Somerset County, which investigations utilized all permissible means of police investigation, including a polygraph test taken by Raymond, and from the other documents before the court, was that Catherine's death was accidental.