524 A.2d 70

**Sing Ying C. KAO**

v.

**Ben HSIA, et al.**

**No. 126, Sept. Term, 1986.**

Court of Appeals of Maryland.

April 21, 1987.

**368**

Theodore A. Miller, Rockville, for appellant.

William F. Huffman, Silver Spring, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

ADKINS, Judge.

■ This appeal from the Orphans' Court for Montgomery County involves the circumstances under which issues may be transmitted by an orphans' court to a circuit court, for resolution by the latter, and the appropriate subject matter of issues. For reasons we shall in due course explain, we hold that the Orphans' Court for Montgomery County erred in transmitting to the circuit court for that county the issues now before us.[1] We first sketch the factual and procedural background of the case.

---

1. In Montgomery County the several judges of the circuit court sit, in rotation, "as an Orphans' Court for" that county and in that capacity "have and exercise all the power, authority and jurisdiction which the present Orphans' Courts now have and exercise, or which may hereafter be provided by law." The same arrangement exists in Harford County. Const., Art. IV, § 20(b) (Ch. 744, Acts of 1963, ratified 3 November 1964, effective 8 November 1966). Nevertheless, the Circuit Court for Montgomery County does not sit as an orphans' court. While the circuit court judges sit in the Orphans' Court for Montgomery County, the orphans' court there is still exactly that, and nothing more. *Md. Natl. Bk. v. United Jewish App.*, 286 Md. 274, 276 n. 1, 407 A.2d 1130, 1131 (1979); *Schlossberg v. Schlossberg*, 275 Md. 600, 615,

## I. *Background*

Sing-Pao Chiang, a native of mainland China, came to the United States many years ago and eventually became a naturalized citizen. Somewhat late in life she married (apparently in Taiwan) a widower, Charles C.H. Hsia. Mr. Hsia had four sons by his previous marriage, Arthur, Ben, Carl, and Donald Hsia.

In 1973, when Sing-Pao Chiang Hsia and Charles C.H. Hsia were married to each other and residing in Montgomery County, they executed wills. Hers left one-third of her estate to her husband, if he survived her, and if not, to her four stepsons. The remaining two-thirds were left to her sister, Sing-Ying C. Kao (also known as Xin Ying Jiang), with contingent gifts to two schools if Mrs. Kao did not survive Mrs. Hsia.[2] His left everything to his wife if she survived, and otherwise to his four sons and Mrs. Kao in equal shares. At that time Mrs. Kao was a resident of Shanghai, China, but in 1981 she came to live with Mr. and Mrs. Hsia.

Mr. Hsia died in Montgomery County on 28 April 1983. All his property passed to Mrs. Hsia, not by virtue of his will, but by survivorship—it was all held by the entireties, according to Mrs. Kao. On 2 June 1983 Mrs. Hsia executed a new will, revoking the 1973 will and leaving the bulk of her estate to her sister, Sing-Ying C. Kao. The 1983 will made no mention of her four stepsons.

When Mrs. Hsia's will was filed for probate in the Orphans' Court for Montgomery County, three of the stepsons, Ben, Carl, and Donald Hsia, petitioned to caveat the

---

343 A.2d 234, 244 (1975); *Willoner v. Davis,* 30 Md.App. 444, 448, 353 A.2d 267, 270, *aff'd sub nom. Davis v. Davis,* 278 Md. 534, 365 A.2d 1004 (1976). We note that many of the pleadings in this case are captioned "In the Circuit Court for Montgomery County sitting as an Orphans' Court." That is simply incorrect. Proceedings in the Orphans' Court for Montgomery County take place in that court, with a circuit court judge presiding.

**2.** Mrs. Kao is the appellant here and is sometimes hereinafter referred to as "Caveatee."

1983 will.[3] The petition charged that Mrs. Hsia lacked testamentary capacity, that Mrs. Kao had procured the will by undue influence and fraud, and that the will breached a contract Mr. and Mrs. Hsia had made with respect to the disposition of their estates. Issues for the most part reflecting these contentions were framed by the Orphans' Court for Montgomery County and transmitted to the Circuit Court for Montgomery County. The propriety of those issues is not before us. It is clear, however, that the Caveators hoped to invalidate the 1983 will, thereby reviving the 1973 document with its more favorable (to them) provisions.

There were extensive proceedings in the circuit court, including lengthy discovery. Eventually, the Caveators moved to remand the case to the orphans' court for the framing of supplementary issues. The motion is barren of specific factual allegations, averring only that "[t]hrough discovery substantial additional facts were uncovered which are vital to this case and which have prompted the need for supplementary issues to be raised." It seems, however, that the Caveators had unearthed some provisions of Taiwanese law that they thought would be beneficial to them, even if Mrs. Hsia had possessed testamentary capacity in 1983, had not been unduly influenced or defrauded by Mrs. Kao, and had not breached any contract with the late Mr. Hsia. In any event, the remand was ordered, and the propriety of that order is not before us.

On remand, and without the benefit of further pleadings to elucidate the Caveators' new theory, the orphans' court framed and transmitted to the circuit court "the following supplementary issues ... to be consolidated with the issues" previously transmitted:

> 1. Does this Court recognize and take notice of the laws of the Republic of China [Taiwan] as applied to its nationals?

---

**3.** These three stepsons are the appellees here and are hereinafter referred to as "Caveators."

2. Does this Court recognize and accept as binding the marriage contracts of nationals of the Republic of China when those marriage contracts are entered into in the Republic of China and pursuant to those laws?

3. Does this Court recognize and accept as binding the resulting contract, either quasi-contract or implied contract, with the children of such nationals when such children are born in the Republic of China and under the laws of the Republic of China, and in particular the right under the laws of the Republic of China that their parent may not under those laws disinherit those children by Will or in any other manner?

4. Did the Will of Charles C.H. Hsia, the father of the Caveators, the four sons, purport to disinherit the four sons?

5. Did the advice given to one of the sons by his father that 'We have taken care of you in our Wills' induce the sons not to contest their father's Will?

6. Did the Will of Sing-Pao C. Hsia, the decedent, attempt to controvert the sons' right of inheritance and was such attempt in violation of their legal rights?

7. Does this Court recognize the right to 'dual nationality' as does the United States Government and as evidenced by the information provided by the United States Government on passports issued by [it]?

8. Does this Court recognize the rights of the Caveators as dual nationals, under the laws of the Republic of China?

9. Does this Court recognize and take judicial notice of the provisions of Article 1, Section 10 of the Constitution of the United States which forbids any state to pass a law impairing the Obligation of Contracts, and how does that Constitutional provision affect the Caveators?

It is from the order transmitting these issues that Sing-Ying C. Kao (Caveatee), appeals. As we have said, the

appellees are her late sister's three caveator-stepsons, Ben, Carl, and Donald Hsia.[4]

## II. *Questions on Appeal*

Caveatee contends (as we see her contentions) that:

1. An orphans' court may not frame and transmit issues to a circuit court unless the basis for them has been established by pleadings in the orphans' court;

2. An orphans' court may not transmit issues of law to a circuit court; and

3. Once an orphans' court has transmitted issues to a circuit court, the orphans' court may not thereafter add supplemental issues.[5]

Caveators respond that a circuit court may require an orphans' court to transmit supplemental issues; that it is appropriate to transmit issues of law (Caveators concede, perhaps too quickly, that all the issues before us are of law); and that because the circuit court cannot "be relegated to the function of a mere [fact-finding] conduit" what occurred here was proper.[6]

---

4. An appeal lies from an order by which an orphans' court transmits issues to a circuit court. *See, e.g., Nugent v. Wright,* 277 Md. 614, 616, 356 A.2d 548, 550 (1976); *Schlossberg v. Schlossberg,* 275 Md. 600, 343 A.2d 234 (1975); *Holland v. Enright (Holland II),* 169 Md. 390, 181 A. 836 (1935) ; *Holland v. Enright (Holland I),* 167 Md. 604, 175 A. 466 (1934); *Safe Deposit and Trust Co. v. Hanna,* 159 Md. 452, 150 A. 870 (1930). This rule has not been altered by the orphans' court arrangement that exists in Montgomery County. *Schlossberg,* 275 Md. at 615, 343 A.2d at 244. Caveatee appealed to the Court of Special Appeals pursuant to § 12–501 of the Cts. and Jud.Pro.Art. We granted certiorari while the case was still pending in that court.

5. Caveatee also questions whether Caveators' motion for supplemental issues sufficiently complies with Md.Rule 2–311(c) and (d). In view of our disposition of this case, we do not reach that question.

6. Caveators also contend that the circuit court exceeded its powers when it "waived" a procedural error committed by Caveatee. That error was Caveatee's inadvertent filing of objections to the supplementary issues in the circuit court instead of the orphans' court. The circuit court allowed Caveatee to renew those objections in the orphans' court. This contention has no relevance to the appeal, since

Before applying these arguments to the record before us, it will be helpful to review well-established law pertaining to orphans' courts and issues emanating therefrom.

### III. *Applicable Law*

■ Orphans' courts were first established in Maryland by Ch. 8, Acts of 1777 (February session).[7] They were and are courts of limited jurisdiction. *Crandall v. Crandall,* 218 Md. 598, 600, 147 A.2d 754, 755 (1959). Section 2–102(a) of the Estates and Trusts Art. provides:

> The court may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent. It may summon witnesses. The court shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred.

The limitation of jurisdiction applies to the Orphans' Court for Montgomery County just as it applies to all other orphans' courts. It is not changed by the fact that circuit court judges sit in the orphans' court in that county. *See* n. 1, *supra,* and cases there cited. *See also Barter Systems v. Rosner,* 64 Md.App. 255, 494 A.2d 964 (1985).

The practice of sending issues from an orphans' court to a circuit court is also of ancient lineage. In 1798 the laws relating to orphans' courts were comprehensively amended and expanded, and the power to transmit issues was expressly conferred. Ch. 101, III, ch. 15, s. 17, Acts of 1798. The practice was apparently borrowed from the early chancery and ecclesiastical courts. *Pegg v. Warford,* 4 Md. 385, 393 (1853). *See* n. 5, *supra.* That practice involved taking testimony by secret written depositions, a method which did

---

the orphans' court, after considering Caveatee's objections, transmitted the issues anyway, thus achieving the result desired by Caveators.

7. For an outline of jurisdiction over estate administration in Maryland prior to that time, *see* 1 P. Sykes, *Maryland Practice: Probate Law and Practice* Introduction, and § 201 (1956). The early practice evolved from that of the ecclesiastical courts of England.

not lend itself to the ready resolution of factual disputes. *See Phillips v. Phillips,* 215 Md. 28, 38–39, 136 A.2d 862, 863–64 (1957) (concurring opinion of Brune, C.J.). As Blackstone explained, "if any matter of fact is strongly controverted, [the Court of Chancery] is so sensible of the deficiency of trial by written depositions, that it will not bind the parties thereby, but usually directs the matter to be tried by jury ...," and this was accomplished by sending issues to a law court. 3 W. Blackstone, *Commentaries on the Law of England* 452 (facsimile ed. 1979) (1st ed. 1768). *See also* Code, former Art. 16, § 39 (1957, repealed 1962); Code, former Art. 31A, § 9 (1957, repealed 1973) (both dealing with sending issues from equity court to law court for advisory jury verdict); and Md.Rule 2–511(d) (abolishing that practice).[8]

While the transmittal of issues from equity to law is not now available in the trial courts of general jurisdiction, the ancient practice is still alive and well in the orphans' courts. The present statutory provision is § 2–105(b) of the Estates and Trusts Art.:

At the request of an interested person made within the time determined by the court, the issue of fact may be determined by a court of law. When the request is made before the [orphans'] court has determined the issue of fact, the [orphans'] court shall transmit the issue to a court of law.

An orphans' court may not, however, send *any* issue of fact to a circuit court for determination. Because of the orphans' court's limited jurisdiction, it must first appear that the subject matter to which the fact relates is within the court's jurisdiction. In *Myers v. Hart,* 248 Md. 443, 447, 237 A.2d 41, 44 (1968), we explained that

it [the transmission of issues] is a procedure available in all cases in controversy within the jurisdiction of the

---

**8.** Rule 2–511(d) is the successor to former Rule 517, adopted in 1961, to do away with the then little-used practice of sending issues of fact from equity to law.

orphans' court for which no special provision has been made.... It is essential, however, that each issue meet [these] tests: (1) Does the orphans' court have jurisdiction of the subject? (2) Is the question properly before the orphans' court? (3) Is the issue relevant and material to the question before the orphans' court? [citation omitted].

*See also Ades v. Norins,* 204 Md. 267, 103 A.2d 842 (1954); *Fidelity Trust Co. v. Barrett,* 186 Md. 483, 47 A.2d 72 (1946); and *Hill v. Lewis,* 21 Md.App. 121, 318 A.2d 850 (1974).

These tests, of course, cannot be applied unless there are pleadings in the orphans' court (such as a petition to caveat and an answer thereto) which demonstrate the existence of a factual controversy, that the controversy concerns a subject matter within the jurisdiction of the orphans' court, and that the remaining elements of the *Myers* test are met. *See, e.g., Nugent,* 277 Md. at 619–20, 356 A.2d at 552; *Fidelity Trust Co., supra; see generally* P. Sykes, *Contest of Wills in Maryland* § 23 (1941).

The issues, moreover, must be issues of fact, susceptible to determination on a "yes or no" basis by a jury or other trier of fact. Section 2–105(b) of the Estates and Trusts Art. refers to "the issue of fact" and innumerable cases in this Court have emphasized that requirement. For example, in *Nugent,* 277 Md. at 619, 356 A.2d at 552, Judge Singley observed for the Court, "[i]ssues involve questions of fact in dispute between the parties, to be ascertained from the petition and answer, so framed that the jury can give but a single answer..." [citations omitted]. And we went on to hold that "[i]t is impermissible to submit an issue which poses a pure question of law..." because this is "unwarranted by § 2–105(b) of the Estates and Trusts Article...." *Id.* at 620, 356 A.2d at 552. In *Myers,* 248 Md. at 447, 237 A.2d at 44, we found defective issues that presented only a question of law. In *Fidelity Trust Co.,* 186 Md. at 488–89, 47 A.2d at 74, we explained "[o]nly questions of fact which are properly in issue between the

parties in the Orphans' Court should be sent to a court of law for trial...." In *Forsythe v. Baker*, 180 Md. 144, 149, 23 A.2d 36, 38 (1941), we pointed out that it is the duty of the circuit court to submit issues to the jury "[u]nless [they] ... contain solely questions of law...." And in *Dronenburg v. Harris*, 108 Md. 597, 617, 71 A. 81, 87 (1908), we said "a jury in civil cases cannot be required to pass upon questions of law; and it is the duty of the Circuit Courts to refuse to submit to the jury an issue that presents only a question of law." As *Dronenburg* makes clear, the requirement that issues must be of fact, not law, applies whether the ultimate fact-finder is to be a circuit court jury or a circuit court judge sitting without a jury.

■ It is also clear that once an orphans' court has transmitted issues, it ordinarily cannot revoke, modify, or supplement them. *Forsythe*, 180 Md. at 149, 23 A.2d at 38; *Cook v. Carr*, 20 Md. 403 (1863); *Pegg*, 4 Md. at 395; *Hill*, 21 Md.App. at 127, 318 A.2d at 854. *But see Holland II*, 169 Md. at 397, 181 A. at 839 (under some circumstances, issues may be rescinded on petition filed within 30 days of transmittal).[9] Nor can the circuit court modify or supplement issues. Unless the issues are immaterial or involve only pure questions of law, or unless they are abandoned by consent of all parties, it is the duty of the circuit court to submit to the jury the issues received from the orphans' court. *Holland I*, 167 Md. at 608–09, 175 A. at 468. *See also Forsythe, Cook*, and *Pegg*, all *supra*. This is because the function of the circuit court

> as prescribed by the statute is neither that of an appellate nor strictly speaking that of a court of original jurisdiction, but rather that of a tribunal ancillary to the orphans' court, whose aid is invoked for the single purpose of determining issues of fact submitted to it by the orphans'

---

9. By consent of the parties, however, issues transmitted to a circuit court may be abandoned there, in which event the orphans' court may frame other issues "without prejudice to the rights of either party." *Pegg*, 4 Md. at 396.

court for its guidance in dealing with some matter before it.

*Holland I,* 167 Md. at 607–08, 175 A. at 468; *and see Ades,* 204 Md. at 273, 103 A.2d at 844. In short, in an issues case, the circuit court does not exercise its original jurisdiction; it acts pursuant to a grant of special, limited, statutory jurisdiction.

 To complete this summary review of the law pertaining to issues from the orphans' court, we need only add that once the circuit court has decided the issues, that determination is conclusive on the orphans' court. *Forsythe,* 180 Md. at 149, 23 A.2d at 38; *Hill,* 21 Md.App. at 127, 318 A.2d at 854; *see* Estates and Trusts Art. § 2–105(c).

## IV. *The Case Before Us*

We turn now to the questions raised by Caveatee. The result we reach is clearly foreshadowed by the principles of law we have discussed. We must reverse the order of the Orphans' Court for Montgomery County transmitting to the circuit court the issues before us.

 To begin with, the proceedings in the orphans' court in connection with these issues were simply insufficient to frame any issues.

An issue cannot be made up in any way except upon affirmative averment on one side and denial on the other. This collision of statement is its very substance and essence.

*Fidelity Trust Co.,* 186 Md. at 489, 47 A.2d at 74–75. A bare allegation that "[t]hrough discovery substantial additional facts were uncovered which are vital to this case and which have prompted the need for supplementary issues to be raised" simply does not suffice. We cannot tell (nor could the orphans' court) what the vital additional facts may be, or whether they or any of them are controverted, thus producing a need for issues. Nor can we determine with certainty whether the subject-matter Caveators are concerned with is within the jurisdiction of the orphans' court.

As cases like *Clarke v. Clarke*, 291 Md. 289, 435 A.2d 415 (1981), and *Myers, supra,* demonstrate, this may be a complex question. It cannot be decided in a vacuum, without the benefit of facts. Moreover, *sans* proper pleadings and facts, we cannot tell (nor could the orphans' court) whether the matter is properly before the orphans' court or whether the issues are relevant and material to questions before the orphans' court. In sum, the essential predicates for framing issues and for testing whether issues of fact are appropriate are totally lacking on this record.

■ Next, the issues are issues of law. Caveators so concede, and we accept this concession, although Issue 5 appears to be factual, and some others might be regarded as mixed issues of fact and law, and thus perhaps permissible under proper instructions. *See Nugent,* 277 Md. at 620, 356 A.2d at 552.[10] But even should we so regard them, for the reasons just stated, there is no way in which we can determine that they are relevant and material to a matter properly before the orphans' court.

Nor can Caveators solve their problem by saying that they "withdraw their request for a trial by jury and ask that all issues be tried by the Circuit Court, including both the issues of fact and the issues of law." The whole concept of issues is that particular factual controversies are to be determined by the circuit court. Of course, in doing so, the circuit court must apply pertinent law, whether by instructions to the jury or otherwise, if the matter is heard non-jury. But the controverted facts must be present in order to raise the questions of law. Here, the facts involved in Caveators' original issues have to do with testamentary capacity, undue influence, fraud, and breach of contract to make a will. The essentially-legal questions embodied in the issues now before us have nothing to do

---

10. We do not mean to intimate that we think any of the issues appropriate. Issue 9, for example, asking in part whether the court takes judicial notice of part of the United States Constitution, is on its face absurd. See Md.Decl. of Rights, Art. 2.

with those factual controversies. In effect, they ask the circuit court to give an advisory opinion on questions of law. This the circuit court cannot do, *see Hatt v. Anderson*, 297 Md. 42, 46, 464 A.2d 1076, 1078 (1983) ("the addressing of non-justiciable issues would place courts in the position of rendering purely advisory opinions, a long forbidden practice in this State"), nor can Caveators transform their will caveat case into something quite different by the procedure they have employed here.

In this regard, Caveators are largely incorrect in arguing that in an issues case, a circuit court is not a "mere conduit" and may exercise its inherent power. As we explained in Part III of this opinion, when it has issues from the orphans' court before it, the circuit court does not exercise its general jurisdiction. It is ancillary to the orphans' court and can do no more than answer the issues before it. In doing so, it may employ the ordinary procedure available in circuit court.

> The power of the court and its duty [is] to see that a verdict, upon the issues propounded for inquiry before a jury [is] reached by legal steps, and competent and legal evidence. It [is] the province of the court to decide all questions necessarily incidental to the bringing to trial and verdict; and when a verdict [is] obtained, to certify it to the Orphans Court, whence the issues came.

*Diffenderfer v. Griffith*, 57 Md. 81, 84 (1881). Thus, the circuit court may, in an issues case, direct a verdict, *McIntyre v. Saltysiak*, 205 Md. 415, 109 A.2d 70 (1954), grant a new trial, *Schmeizl v. Schmeizl*, 184 Md. 584, 42 A.2d 106 (1945), or grant summary judgment, *Hill, supra*. *See generally* 1 P. Sykes, *Maryland Practice: Probate Law and Practice* § 227 (1956). But, in the language of *Diffenderfer*, the circuit court may only "decide all questions necessarily incidental" to the determination of "the issues propounded...." It cannot decide questions of law that do not relate to those issues. And in this case, the only issues properly before the circuit court were Caveators' first set of issues which, as we have seen, had nothing to do with the

questions involved in the second set. The circuit court had before it no case in which it could decide the legal or other questions propounded by that second set.

Finally, we agree with Caveatee that it is improper for an orphans' court to transmit issues supplemental to issues already sent. *See, e.g., Myers, Forsythe,* the two *Holland* cases, and *Pegg,* all *supra.* An orphans' court may, however, send *successive* issues. For instance, if one set of issues involves the proper attestation of a will, and it is resolved in favor of the will, a party in interest may then require other issues dealing with mental capacity or undue influence "or any other fact not inconsistent with the execution, attestation and publication of the paper...." *Pegg,* 4 Md. at 394. It appears that the matters Caveators now wish to raise differ from those encompassed in the first set of issues. For the reasons we have given, we reverse the order of the orphans' court transmitting the issues in this case. On remand, however, Caveators are free to raise these new matters in the orphans' court by proper procedure, and may, if they comply with the requirements set forth in Part III of this opinion, obtain a set of successive issues to be transmitted to the circuit court.[11]

ORDER OF THE ORPHANS' COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. APPELLEES TO PAY THE COSTS.

---

11. If the parties do not want a jury trial on any issues, but simply wish a decision on both fact and law by a judge of the circuit court, they do not necessarily have to leave the orphans' court. As to the first set of issues transmitted, the parties may by agreement withdraw them from the circuit court. *See* note 9, *supra.* As to both sets of issues, assuming that the questions they seek to raise are all within orphans' court jurisdiction, and absent any procedural problems, the orphans' court has authority to determine issues of fact. Estates and Trusts Art. § 2–105(a). In doing so it is no longer bound by the ancient practices of the ecclesiastical courts. And it may determine questions of law relating to matters properly before it. In Montgomery County, all of this would be done by a judge of the circuit court *sitting in the* orphans' court.